UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

BOIMAH FLOMO *ET AL.*,                    )
      *Plaintiffs*,                         )
                                            )
      *vs.*                                 )     1:06-cv-00627-DFH-JMS
                                            )
BRIDGESTONE AMERICAS HOLDING, INC. *ET*   )
*AL.*,                                    )
      *Defendants.*                         )

## ORDER

Presently before the Court is Plaintiffs' Motion to Compel (the "Motion"). [Dkt. No. 145.] It has been the subject of extensive briefing [Dkt. Nos. 146, 152, 155, 189-90] and oral argument [Dkt. No. 193].

### BACKGROUND

This action has been the subject of two significant prior opinions from the Court that bear on the present Motion, which are only briefly summarized here. First, in *Roe v. Bridgestone Corp.* ("*Roe I*"), 492 F. Supp. 2d 988 (S.D. Ind. 2007), the Court dismissed all but Count II of the Complaint. Broadly speaking, Count II alleges that Defendants' Liberian affiliate, Firestone Plantations Co. ("Firestone Liberia"), assigns Plaintiffs' fathers so much work at Firestone Liberia's rubber plantation, that the fathers must conscript Plaintiffs help complete it all. The problem with that alleged situation is two-fold: Plaintiffs are children, some not even yet teenagers; and the work involves harvesting (or "tapping") latex from trees, which can be back-breaking and dangerous. *Roe I* held that those allegations, if true, sufficiently set forth a claim under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, because they violate the law of nations as embodied in Internal Labour Organization, Worst Forms of Child Labour Convention Number 182, 38 I.L.M. 1207 ("ILO Convention 182"). That convention, signed by the United States in

-1-

1999 and effective in 2000, prohibits the "worst" forms of child labor, including slavery, forced or compulsory labor, and other "work which, by its nature or the circumstances which it is carried out, is likely to harm the health, safety, or morals of children." *Id.* at Art. 3.

The second opinion relevant for present purposes is *Roe v. Bridgestone Corp.* ("*Roe II*"), 2009 U.S. Dist. LEXIS 19010 (S.D. Ind. Mar. 4, 2009). There, the Court denied Plaintiffs' request to make this case a class action.

The Motion currently at issue is a wide-ranging motion to compel that Plaintiffs have filed. Defendants report that they have provided Plaintiffs with all the information and documents about Plaintiffs' allegations of child labor. They say that everything else that Plaintiffs now seek relates only to claims that have been dismissed, or to other children who are not parties to this suit following the Court's denial of class certification. Defendants also vehemently dispute the merits of Plaintiffs' ATS claim, and further assert vigilance in their efforts to prevent children from working on the plantation. That said, this is not the time or motion by which the merits of Plaintiffs' claims should be decided.


**ANALYSIS**

**A. General Standards Applicable to Discovery**

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The definition of "relevant" for discovery purposes is a broad one, "encompass[ing] any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Cunningham v. SmithKline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009) (quotation and alteration omitted). If a party believes that a discovery request is objectionable, the party must so state explicitly, and must, in the face of a motion to compel,

show with "specificity that the request is improper." *Id.* It will not suffice merely to invoke "the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Burkybile v. Mitsubishi Motors Corp.*, 2006 U.S. Dist. LEXIS 57892, at *20 (N.D. Ill. 2006) (quotation omitted). And with respect to claims of undue burden, conclusory representations in briefs do not suffice either. *Cunningham*, 255 F.R.D. at 478; *see also Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 10 (D. D.C. 2007) ("[T]he Court only entertains an unduly burdensome objection when the responding party demonstrates how the document is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden. The responding party cannot just merely state in a conclusory fashion that the requests are burdensome." (internal quotations and citations omitted)).

### B. Temporal Scope

Generally speaking, Plaintiffs have requested documents going back as far as 1995.[1] Plaintiffs say that a ten-year statute of limitations applies to their ATS claim. [Dkt. No. 146 at 11.] And because they filed their Complaint in 2005, they argue that discovery back to the start of the statutory period is reasonable, citing cases that so hold. [Dkt. No. 155 at 4-5.] Defendants do not agree that Plaintiffs could recover under the ATS for any conduct before 1999. That was when the United States first signed ILO Convention 182, which outlawed the "worst forms" of

---

[1] Plaintiffs' discovery requests actually asked for documents or information beginning in 1989 for most requests, but without temporal limitation as to a few document requests and only back to 1994 for a few interrogatories. [Dkt. Nos. 146-3 at 3, 11, 15; 146-4 at 1, 37-39.] Except for the "University of Akron" and "historical" documents, which are discussed separately below, Plaintiffs have offered no cogent argument about the discoverability of documents or information before 1995. The Court accordingly **DENIES** the Motion to the extent that it seeks documents or information before 1995 unless otherwise noted. *See United States v. Cinergy Corp.*, 495 F. Supp. 2d 909, 914 (S.D. Ind. 2007).

child labor and which the Court previously found established the norms whose violations can form the basis for an ATS claim.  [Dkt. No. 152 at 5-6 (citing *Roe I*, 492 F. Supp. 2d at 1021).]  (In fact, Defendants say, the potential recovery period might be even later, to 2000, when ILO Convention 182 became effective as to the United States, or perhaps 2003, when Liberia ratified it.  [*Id.*])

At present, however, the Court need not resolve that damages-period debate.  As Plaintiffs correctly point out, courts often find that matters occurring before the liability period satisfy the low "relevance" standard for discoverability.  [Dkt. No. 146 at 11 (citing *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 652 (D. Kan. 2006) (collecting cases).)  To be sure, matters become less and less relevant the further in time they are from the start of the liability period.  "The task of the trial court is to balance the relevance of the information against the burden of production on Defendants."  *Johnson*, 238 F.R.D. at 652.

It is the Defendants' job to demonstrate the point at which the burden outweighs the benefit of discovery.  *E.g.*, *Graham v. Casey's Gen. Stores, Inc.*, 206 F.R.D. 251, 254 (S.D. Ind. 2002) ("The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant." (citation omitted).)  They have not done that—nor even tried.  Defendants report that many of their otherwise responsive documents were destroyed in Liberia's most recent civil war, and during various labor disputes on the Plantation.  [Dkt. No. 152 at 6.]  Thus, whatever burden Plaintiffs' request would have otherwise imposed has been reduced.  Further, their objection as to temporal scope notwithstanding (for all the discovery requests at issue), Defendants say that they have already provided everything otherwise non-objectionable that they have before 1999 that is in hardcopy form.  [*See id.*; Dkt. No. 188 at 2-6; Tr. 57.]  As for electronically stored information, Defendants do not say how much they have to

search. It may not be much, or it could be a lot; Defendants do not say.[2] Their failure to provide a description means that they have not established an undue burden.

Even if Plaintiffs' cause of action is limited to 1999 and afterward, the Court is not prepared to say as a matter of law that matters occurring in 1995 could not be relevant to it. Because Defendants have neither shown that matters before that time are in fact irrelevant, nor demonstrated that it would be burdensome to permit Plaintiffs to conduct discovery back that far, Defendants generally have not satisfied their burden of proof with respect to their temporal scope objection. Accordingly, the Court **OVERRULES** it. To the extent that Plaintiffs' Motion seeks information dating back to 1995, it is reasonably calculated to lead to admissible evidence, so long as the specific request itself is otherwise proper.

### C. Consequences of *Roe II*

Plaintiffs drafted their discovery requests while this case was still a putative class action, to be litigated on behalf of all minors who allegedly work on the Plantation. Because *Roe II* denied class certification, many of the discovery requests must be narrowed to encompass documents and information relating only to Plaintiffs' claims, not to claims of other minors on the Plantation.

### D. Plaintiffs' Discovery Requests

At the Court's request, the parties engaged in another round of meetings to try to resolve by agreement some disputed items after the Motion was filed in light of the Court's denial of class certification. They were able to resolve some items. [Dkt. No. 188.] In their Joint Status Report [*id.*], they grouped the remaining items into broad categories for ease of reference. The Court will discuss each of those categories, before concluding with rulings on the specific discovery items at issue.

---

[2] Email was not nearly so ubiquitous in 1995 as it is today.

*1. Security at Firestone Liberia*

One of the largest categories of disputed discovery requests involve discovery about the security force on the Plantation. That force is called the Plant Protection Department ("PPD"). Besides providing security on the Plantation, the parties agree that the PPD also patrols the Plantation "to keep an eye out for under-aged children and to help investigate reports of child labor." [Dkt. No. 152 at 7.] Defendants concede the relevance of information relating to the PPD's investigations into child labor and its enforcement of the child-labor policy that Defendants implemented following ILO Convention 182 (a policy Plaintiffs say was a sham until rather recently). [*Id.*] They claim to have already provided that information. [*Id.*] But they object to producing anything else as irrelevant for two main reasons.

Defendants object that some of the requests are improper because they seek information trying to tie the Defendants to the former, and notorious, Liberian government headed by Charles Taylor. There is, however, nothing wrong with that in most instances. After all, Defendants have challenged Plaintiffs' ability to prove state action (discussed in the next section), so it follows that Plaintiffs' would seek discovery toward proof of Defendants' ties to the Liberian government. Such discovery is relevant.

Insofar as Plaintiffs are using their discovery requests to try to prove that the PPD "is a notoriously violent and intimidating security force," however, Defendants are correct that such information is irrelevant. [Dkt. No. 146 at 13.] As this Court has held previously, "The Complaint does not include any [non-conclusory] allegations by any of the plaintiffs stating that they or other Plantation workers have been threatened with physical force." *Roe I*, 492 F. Supp. 2d at 1017. The Court accordingly dismissed the Complaint to the extent that it sought to recover on that theory. *See id.* The only claim remaining in this case is whether Defendants "are

encouraging and even requiring parents to require their children as young as six, seven, or ten years old to do…heavy and hazardous work." *Id.* at 1022.

Thus, the discovery that does not relate to state action must relate to the PPD's efforts to encourage (or discourage) Plaintiffs from working on the Plantation; otherwise it is not relevant.

   2.   *"State Action"*

Another major area of disagreement between the parties is discovery into "state action," that is, the connections (if any) between and among Defendants and the past and present Liberian governments. Plaintiffs would prefer to call this entire area irrelevant; as they understand the ATS, they do not have to plead, much less prove, any state action to recover for universally condemned wrongs like the "worst" forms of child labor. [Dkt. No. 146 at 16.] Plaintiffs anticipated—correctly—that Defendants might contend that state action is a required element of their ATS claims. [Dkt. No. 2-25 at 26-27 (including lack of facts establishing state action among grounds for motion to dismiss).] Accordingly, Plaintiffs went ahead and alleged in their Complaint that Defendants and the Liberian government are "co-venturer[s]" on the Plantation with "knowledge of [the] conditions [such that the government] daily ratifies" them. [Dkt. No. 2 ¶ 97.]

Defendants say that they have provided Plaintiffs with the Concession Agreements (through which Firestone Liberia leased the property from the government) and communications with the Liberian government about child labor and/or the Plaintiffs' parents' workloads, and that should be enough to get Plaintiffs through the motion for summary judgment that Defendants have filed, in part, on that issue. [Dkt. Nos. 152 at 10; 209 at 43-44.] Defendants speculate, but do not concede, that their prior production may be enough for Plaintiffs to establish state action, or perhaps the Court may decide on the pending motion for summary judgment that no state action (and therefore no discovery on it) is required at all. [Dkt. Nos. 152

at 11; 190 at 2-3; Tr. 40 (arguing that the Court might decide that any required state action "can be easily satisfied" by the Concession Agreements already provided).] And if not, Defendants assert the Court will have sufficient "context" to decide the appropriate scope of discovery once the Court has fleshed out exactly what Plaintiffs must prove. [Dkt. No. 190 at 3.]

The Court rejects Defendants' arguments as to the timing of discovery on this issue. Whether or not the Court ultimately decides that state action is an element of Plaintiffs' case, Defendants maintain that it is. Plaintiffs are, therefore, entitled to pursue discovery about it unless and until the Court concludes either that Defendants are wrong or that Plaintiffs have made the requisite showing. Fed. R. Civ. Pro. 26(b)(1) (authorizing discovery about "any party's claim or defense"). Even assuming that state action is a required element and that Defendants have already provided enough for Plaintiffs to survive summary judgment on that issue, the standard for surviving summary judgment is a low one—far less than what is required at trial. *See* Fed. R. Civ. Pro. 56(c) (requiring non-moving party to merely demonstrate a genuine issue of material fact to survive a motion for summary judgment). Thus, additional discovery would still be authorized under the Federal Rules. While the Court's ruling on the summary judgment motion could certainly provide additional "context" for the state action issue, waiting for that ruling (on a motion that is not yet even fully briefed) will further delay the completion of discovery—in this case that was originally filed in November 2005.

Besides, as Plaintiffs correctly note, the state action inquiry is a highly fact sensitive one. *See Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296 (2001) (cataloging the "host of facts" that cases have used to find otherwise "private" entities really state actors). The Court thus needs a full and fair exposition of the facts to properly rule on the issue. It will, therefore, afford Plaintiffs some latitude in their discovery requests, even though Defendants

dispute Plaintiffs' characterization of the test that the Court may eventually find applicable. *Cf. Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961) ("[T]o fashion and apply a precise formula for recognition of state responsibility under the Equal Protection Clause is an 'impossible task' which 'This Court has never attempted.' Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." (internal citation omitted).)

### 3. Education

The Motion next seeks information about the educational system on the Plantation. Plaintiffs say that their school progress has been impeded by the work that they perform. And, as proof that Defendants had only a paper prohibition against child labor until recently, Plaintiffs note that school enrollment increased approximately 50% between 2004 and 2007, the latter being after Plaintiffs say that Firestone actually began enforcing the policy in response to this lawsuit. [Dkt. No. 155 at 12.]

Defendants concede that the topic of education has at least some relevance to Plaintiffs' ATS claim. [Dkt. No. 152 at 13-14.] But Defendants say that Plaintiffs have gone too far in their requests that are not tied to the issue of child labor. They also note that, with respect to enrollment information, Defendants have made available boxes of information to Plaintiffs that Plaintiffs have never come to inspect. [*Id.*]

The Court agrees that at least some discovery in the area of education is appropriate. If Plaintiffs' alleged work interfered with their education, the work might be inappropriate for a child to perform, and potentially qualify it as one of the worst forms of child labor. *See Roe I*, 492 F. Supp. 2d at 1020 (noting that the U.S. Fair Labor Standards Act permits minors aged 14 and 15 to perform agricultural jobs outside of school hours); ILO Convention 182, Art. 3 (outlawing child labor that harms the "health, safety, or morals of children"). The Court will,

therefore, order production of information about Plaintiffs' enrollment and attendance at schools.[3]  But the Court is not, however, willing to order Defendants to produce additional documents about other children's enrollment because Plaintiffs have not yet reviewed the boxes of information on the subject that Defendants have already provided, even if Plaintiffs could convince the Court that discovery into rejected class members' attendance were appropriate.  As to the amount that Defendants charge for school uniform and school fees, Defendants are correct that such information has no bearing on whether Plaintiffs' alleged work in the fields interfered with their ability to obtain an education.

### 4.  *Tappers' Wages and Benefits / Living Conditions*

The Court has combined these next categories of discovery into one for discussion purposes.  Essentially, these items seek information to support Plaintiffs' claim that they are paid low wages (though not so low that they wish to give up their jobs given the overwhelming unemployment in Liberia [Dkt. No. 2 ¶ 49]) and that they live in company-provided housing that is squalid.  Plaintiffs say that this information will help show how Firestone has built an exploitative system of production on the backs of its workers.  [*See* Dkt. No. 189 at 5.]  In large part, however, Defendants are correct that the way that Plaintiffs have framed their case (and the Court's rulings on the Defendants' motion to dismiss) means that much of that information is not relevant.

The Court previously rejected Plaintiffs' attempt to use the ATS to fix what they consider to be the "inhumane" conditions on the Plantation or to increase the wages that Plaintiffs'

---

[3] As Defendants have indicated that they would do, the Court also **ORDERS** Defendants to produce documents that relate to why schools were  built in the locations that they were built. [Dkt. No. 201 ("Tr.") Tr. 46.]  That information may relate to Defendants' expectation that children like Plaintiffs would or would not be able to attend school if they assisted their guardians in the fields.

guardians are paid. *See Roe I*, 492 F. Supp. 2d at 1016 ("[M]atters of wages and working conditions [for adults] fall outside any specific, universal, and obligatory understanding of the prohibition against forced labor."), 1023-24 (finding the "exploitive labor practices that plaintiffs allege in this case" outside the scope of the ATS). Plaintiffs' only remaining theory for recovery is this: To prevent starvation, they must perform types of work that are internationally condemned because their guardians cannot complete their assignments themselves. *See id.* at 1022. And even though the living conditions are described as wretched, they beat the alternative—of nothing.

At least as the case is presently staged, no matter how bad may be Plaintiffs' living conditions or the meager food their guardians' wages can buy at the company store, Plaintiffs cannot recover unless they show that they performed work that was harmful to their wellbeing. The focus of discovery (apart from state action) must, therefore, be on the nature of the work that Plaintiffs performed, if any.

The only discovery in this category that relates to that topic is, albeit somewhat tangentially, discovery related to the amount that Plaintiffs' guardians stood to be paid for their work. If the half-wage that tappers receive when they do not complete all their work means that the family cannot eat or obtain other necessities of life [Dkt. No. 2 ¶47], it might be reasonable to expect that the tappers would be forced to turn to their children to help complete the work because the tappers cannot afford to pay an adult to help them.

Accordingly, the Court will authorize discovery into the exact amounts that the Plaintiffs' guardians were paid during the discovery period and into the prices for basic necessities on the Plantation that Plaintiffs' guardians purchased. Discovery beyond that, however, is too attenuated to the actual ATS claim in this case.

*5. Safety, Healthcare, and Medical Treatment*

There are only two remaining discovery items for this topic.

The first is Document Request 98, which seeks all documents related to the Plantations' hospitals and medical clinics (including those relating to the provision of care). Despite the enormous breadth of this request, Plaintiffs appear to really only want documents that show where the medical facilities are located, what hours those facilities are open, and what services those facilities are equipped to provide on the Plantation. [*See* Dkt. No. 155 at 16.] Defendants complain that documents containing generalized information about medical facilities do not relate to whether Plaintiffs were forced to work in the fields. Defendants are correct insofar as that argument goes. But, the requested information may relate to the extent to which the work Plaintiffs claimed to have performed was inappropriate for a child to perform. If a child could not obtain medical treatment for the types of injuries the work could cause, that may help show that allowing the child to perform the work in the first place constitutes one of the "worst" forms of child labor. *See* ILO Convention 182, Art. 3 (prohibiting child labor that is likely to harm children's health).

Despite the relevance of Plaintiffs' document request (as narrowed by Plaintiffs for the Motion), it would still require the production of practically every document from the medical facilities. Given the specific information that Plaintiffs seek, the better course here is to obtain the information by interrogatory. *See* Fed. R. Civ. Pro. 26(c)(1)(C) (permitting a court to alter the chosen discovery method to avoid undue burden). The Court will so order, as specified at the end of this entry.

The other remaining item is an interrogatory seeking the identities of the individuals who set Defendants' policies regarding safety measures for tappers, and the documents relating to those policies. Defendants maintain that this information is not relevant for the same reasons

that the documents about the medical facilities were not relevant. For the same reasons as the Court concluded otherwise previously, it does so with respect to this item too. Those individuals may have relevant testimony to offer about how dangerous the work that Plaintiffs claimed to have performed is.

### 6. *Human Rights Abuses and Crimes Against Children*

Several of Plaintiffs' discovery requests seek information about Defendants' possible violations of international or Liberian law, whether or not tied to child labor. Defendants appropriately point out that the Court previously dismissed the Complaint insofar as it sought to allege other human abuses beyond Defendants' use of the "worst" forms of child labor. *See Roe I*, 492 F. Supp. 2d at 1017-18 (dismissing Plaintiffs' guardians' claims that they were subject to physical coercion to complete their work), 1022-23 (dismissing claims of violations of international law regarding "cruel, inhuman, and degrading treatment" on the Plantation). Defendants are correct, therefore, that discovery of alleged human rights abuses not tied to child labor is irrelevant.

Plaintiffs say that they want information about instances when children, or their parents, have been threatened, deprived of food and other necessities if children did not work in the fields, or if children (or their guardians) tried to speak out in opposition to working in the fields. [Dkt. No. 146 at 27.] Defendants say that they have already provided that information to the extent that it exists. [*See* Tr. 44.][4] To the extent, however, that Plaintiffs want (by way of

---

[4] Plaintiffs also referenced an allegation that a PPD member may have asked for (or perhaps more accurately, accepted) a bribe to keep from reporting an instance of child labor. [Dkt. No. 148-26.] While not exactly a human rights violation per se, Defendants have indicated that they have provided all documents in their possession about child labor (or the lack thereof) that they have. Those documents would include documents about whether the PPD turns the other way when child labor is discovered, to the extent that Defendants possess any such documents.

hypothetical) additional information about gratuitous violence towards children or about gender discrimination, that type of information would be irrelevant.

The Court will overrule Defendants' objections to the extent that they were raised regarding child labor.  It is not clear, however, that there were any such objections raised.

### 7.  *Tappers' Terminations*

Plaintiffs' document request 120 asks for documents related to the firing or other involuntary separation of tappers.  In the Motion though, Plaintiffs only seek to compel this item for tappers who were fired or forced out for failure to complete their assignments (or diluting the latex that they received to make it look as though they completed the assignments).  [Dkt. No. 146 at 31.]  This narrowed scope of information, as Plaintiffs correctly argue, relates to the extent to which tappers can realistically meet their work obligations.  [*See id.*]  Defendants do not really dispute the relevance of this information.  Instead, they say that they must manually search through personnel files to find it and, after reviewing personnel files back to 2003, have not found any tappers terminated for those reasons.  [Dkt. No. 152 at 20.]  Nonetheless, they will make available all tapper personnel files (subject to protective order) to Plaintiffs if they wish to search any further back in time.  [*Id.*]

It is not clear what, exactly, Plaintiffs' problem with Defendants' approach is.  To the extent that they believe that Defendants only agree to make available files dating back to 2003, that is not how the Court understands Defendants' offer, which encompasses all personnel files back to the start of the discovery period.[5]  To the extent that Plaintiffs argue, however, that

---

[5] If the Court misunderstood Defendants' position, it would nonetheless order Defendants to make the additional files available.  If Defendants are concerned about the inadvertent disclosure of privileged information by making available documents that they have not themselves reviewed, the Court directs Defendants to Fed. R. Evid. 502(d) and (e), which may provide a vehicle to minimize this risk.

Defendants must do the hard work of manually reviewing the files and only turning over the particular ones that Plaintiffs truly want, the Court disagrees. So long as the universe of responsive documents is made available, even if intermingled with documents that are not responsive, Defendants have complied with their discovery obligation. Labor that Plaintiffs could not force Defendants to do via interrogatory (e.g. identify all tappers who were fired for failure to complete their work) cannot be forced upon Defendants by merely re-styling their inquiry as a document request. *Cf.* Fed. R. Civ. Pro. 33(d) ("If the answer to an interrogatory may be determined by examining…a party's business records…and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may [make the business records available for inspection].").

Plaintiffs do complain though that Defendants' brief does not mention items called "Personnel Action Reports." [Dkt. No. 155 at 18.] Those reports may or may not be in the personnel files. Plaintiffs do not know because they have not yet been able to look at the personnel files; Liberian law requires a Defendants to possess an order from this Court (or signed authorizations) before they can make available personnel files from non-parties. Because the Court is now ordering Defendants to make those files available for inspection (but subject to the previously entered protective order [Dkt. No. 80]), Plaintiffs' complaint may be moot. If, after reviewing the personnel files, Plaintiffs believe that Defendants have not fully responded to their discovery request, Plaintiffs may ask the Court to afford them appropriate relief. But the Court will not consider the issue before then.

### 8. The 2005 Labor Dispute and Union Formation

In 2005, there was a labor dispute on the Plantation that culminated in a strike by 2006. Plaintiffs point to media accounts indicating that the strike was caused by the same allegations that are at issue in this case, and say that they should have all documents about it. As one

account begins, "Angry workers have downed tools at Liberia's largest rubber plantation, owned by Bridgestone/Firestone, saying that wages are so low that children as young as seven years old are being forced to help their parents meet production quotas." [Dkt. 146-32 at 1.] Defendants dispute that child labor was a motivating factor in the strike (which they call a wildcat strike as not authorized by the tapper's regular union). [Dkt. No. 152 at 21.] They say that they will produce any documents about child labor to the extent that they have them. They do not, however, believe that any other documents about the strike are relevant. [*Id.*]

Given the media accounts about the strike that almost exactly correspond with the remaining claim in this case, Plaintiffs have made a strong showing that information about the strike is likely to lead to the discovery of admissible information. Further, the Court's previous discussion about wages and other working conditions mean that Defendants have taken an overly narrow view of relevance. Further, the degree to which Plaintiffs' guardians can, or cannot, improve their working conditions through labor actions impacts the degree to which Plaintiffs' fathers truly are compelled to use their children to help complete their work. Accordingly, discovery on this topic should be permitted.

The parties also dispute whether Plaintiffs should be able to access documents about the formation of labor unions for the tappers, and attempts to form new unions for them. Defendants say that union formation has no relevance to whether Defendants condone the use of child labor. [Dkt. No. 152 at 21.] The Court disagrees. The rationale for tappers wanting to form a union (including perhaps in connection with the 2005 labor dispute that was not authorized by the official union), may relate to degree of coercion that Plaintiffs' fathers feel.[6]

---

[6] To the extent that Plaintiffs seek documents from 1967 on the formation of the tappers' official union, that is beyond the temporal scope of discovery. *See supra* at Section B. What is relevant is unionization efforts during the liability period.

### 9. Documents that Defendants Keep at the University of Akron and Other Historical Documents

Sometime in the early 1980's, the Defendants placed a large quantity of documents about their companies' historical operations with the library archives of the University of Akron. [Dkt. No. 152 at 22.] Plaintiffs think that the documents may help them satisfy the state action element of their claim (if it is really an element at all). Defendants say [*id.*] that much of this information relates to the acquisition of the Plantation, and to claims of Plaintiffs' ancestors about the manner in which it was done—claims that the Court has ruled not part of this case. *Roe I*, 492 F. Supp. 2d at 1014 ("[P]laintiffs are not in a position to assert claims for money damages today based on mistreatment of their ancestors."). More importantly, though, Defendants do not want to have to go look through the archives, which they control despite the archive's location at the university. [*Id.*]

The Court is sympathetic to Defendants' concern that the documents (which Defendants do not deem important enough to even keep on their premises) are not likely to contain anything useful to the case. Many may relate only to claims that the Court has ruled Plaintiffs cannot assert. But Defendants have not, however, provided the Court with enough detail about the documents to decide how relevant that they may be vis-à-vis the state action issue. Further, the Court is reluctant to rule, this far before trial, that historians investigating the Plantation should have access to documents that a jury adjudicating Plaintiffs' claims could never see (if otherwise admissible). Accordingly, if Defendants do not want to review the documents themselves (as it seems unlikely that any privilege could attach to the documents), Defendants shall sign whatever authorizations are necessary for Plaintiffs to inspect the documents in the archive.[7] Plaintiffs shall provide Defendants with a copy of any documents that Plaintiffs copy.

---

[7] Apparently, members of the general public cannot directly access the archives.

There is an additional category of "historical" documents that Defendants have not archived at the University of Akron, but that Plaintiffs want. Broadly speaking, those documents chronicle the circumstances through which the land for the Plantation was first leased from the Liberian government in the 1920's—circumstances that Plaintiffs say in their complaint involved forcible conscription of Plaintiffs' ancestors who were "settled" on the Plantation. [Dkt. No. 2 ¶42.] Those types of documents, no matter how tragic the story they may tell, are generally irrelevant to this case following the Court's ruling that Plaintiffs may only recover for wrongs to them personally, not to their ancestors. While those documents from ninety or so years ago may have some minimal relevance in establishing whether Defendants were acting in concert with the Liberian government in say, 2000, that relevance is more than outweighed by the burden to even assemble the documents for inspection. The Court will not, therefore, order Defendants to produce them.

### 10. Documents About Defendants' Financial Worth

Plaintiffs' Document Request Number 159 seeks documents related to tax payments to the Liberian government for Firestone Liberia's yearly production or yearly revenues. [Dkt. No. 146-4 at 40.] Plaintiffs have only moved to compel insofar as this item seeks "current" financial data, not for the alleged liability period. [Tr. 35.] Plaintiffs say that they are entitled to have this information because it relates to their claim for punitive damages as it goes to Defendants' ability to pay, citing various cases that authorize discovery of financial information when punitive damages are at issue. [Dkt. No. 146 at 34.][8] Defendants dispute that punitive damages are authorized under the ATS under the applicable case law. [Dkt. No. 152 at 22-23.]

---

[8] In their brief, Plaintiffs made the off-hand remark, unsupported by legal authority, that the document request also relates to state action. [Dkt. No. 146 at 34.] Because Plaintiffs have not presented cogent argument on the issue (and because Plaintiffs did not cross-reference this item under "state action" in their status report), the Court will not address it.

As Plaintiffs acknowledge [Dkt. No. 146 at 34], courts sometimes bifurcate liability and punitive damages discovery in light of the sensitivity of financial information, *see* Fed. R. Civ. Pro. 26(c)(1)(B) (authorizing courts to regulate the "time" for discovery to protect a party from "embarrassment").  Because Defendants are not publicly traded companies, those concerns are implicated here.  Additionally, and perhaps more importantly, the complicated nature of this case means that any information that the Court might order Defendants to produce now could well be stale by the time the case is ready for trial.  The Court will, therefore, deny the Motion with respect to Number 159, but do so without prejudice.  Plaintiffs may re-move to compel with respect to this item, but no sooner than forty-five days before the discovery cutoff date (which has not yet been set).

### 11. Board Minutes

Document Request Number 59 seeks minutes of Defendants' board meetings. Defendants acknowledge that minutes discussing matters relevant to a lawsuit are discoverable. [Dkt. No. 152 at 23.]  Thus, Defendants have already searched for board minutes about child labor.  [*Id.*]  They do not believe anything else is relevant, however.

As discussed above, the Court disagrees that nothing else is relevant.  Minutes discussing agreements or other interactions with the Liberian government may provide admissible information on the state action issue.  Similarly, discussions on the hazards of the tappers' jobs (which Plaintiffs claim to perform) go to how dangerous the jobs are, and whether it ought ever to be performed by a child.  And discussions about the tappers' expected workload may relate to the need for them to use their children to help them complete their assignments.  Additional searches for responsive documents are, therefore, required.

Having reviewed Defendant's objections to the discovery requests, the Court

**OVERRULES** them **IN PART** and **SUSTAINS** them **IN PART** as follows: [9]

| Discovery Item(s) | Description | Ruling on Objection | Limit(s) Imposed | Reason(s) |
|---|---|---|---|---|
| RFP 1-3, 5-7, 9-11 | Documents re: negotiating Plantation lease from Liberian government and other agreements with Liberian government | Overruled in part | Supplemental production limited to drafts/proposals exchanged with Liberian government and any executed agreements on any subject; and otherwise responsive documents re: Plantation security, tapper workloads, or tapper job safety, | May lead to admissible evidence re: state action and whether alleged work is harmful to minors' wellbeing (and Defendants are already providing all documents re: child labor) |
| RFP 4, 8, 12 | Communications with Liberian government re: lawsuits (including this one) | Overruled in part | Supplemental production limited to otherwise responsive documents re: Plantation security, tapper workloads, tapper job safety, or this lawsuit | May lead to admissible evidence re: state action and re: whether Plaintiffs are compelled to work as alleged (and Defendants are already providing all documents re: child labor) |

---

[9] Defendants have represented that they have already produced (or will produce) "*all* documents that relate to the issue of child labor," [Dkt. No. 152 at 2 (emphasis in original)] and "everything that had anything to do with task sizes" [Tr. 39]. For housekeeping purposes, the Court now **ORDERS** them to do so, to whatever extent that they have not already done so (notwithstanding any limits that the Court otherwise puts on the discovery requests).

| RFP 13-16 | Documents re: 2005 labor dispute on Plantation and communications with unions representing workers (or trying to do so). | Overruled | n/a | May lead to admissible evidence re: whether Plaintiffs are compelled to work as alleged and re: whether their alleged work is harmful |
|---|---|---|---|---|
| RFP 17, 18-19 | Documents re: agreement(s) with the Taylor regime / Liberian government re: Plantation management/security | Overruled | n/a | May lead to admissible evidence re: state action |
| RFP 20-22 | Documents re: agreements with Liberian government | Overruled in part | Supplemental production limited to drafts/proposals exchanged with Liberian government and any executed agreements on any subject; and otherwise responsive documents re: Plantation security, tapper workloads, or tapper job safety | May lead to admissible evidence re: state action and whether alleged work is harmful to minors' wellbeing (and Defendants are already providing all documents re: child labor) |
| RFP 24-25 | Documents re: agreement(s) with the Taylor regime / Liberian government re: Plantation management/security | Overruled | n/a | May lead to admissible evidence re: state action |
| RFP 26 | Documents re: providing food, shelter, and services to Liberian soldiers on the Plantation | Overruled | n/a | May lead to admissible evidence re: state action |

| RFP 27-28 | Documents identifying members of plantation security forces | Overruled in part | Supplemental production limited to individuals assigned to areas where Plaintiffs live or allegedly work, and to their supervisors | May lead to admissible evidence re: state action; identifies individuals who may have witnessed Plaintiffs working or with knowledge of Defendants' efforts to enforce no-child-labor policy (and Defendants are already providing all documents re: child labor) |
|---|---|---|---|---|
| RFP 30 | Documents re: hiring or obtaining security forces | Overruled in part | Supplemental production limited to otherwise responsive documents re: Liberian government | May lead to admissible evidence re: state action (and Defendants are already providing all documents re: child labor) |
| RFP 31-32 | Documents re: policies for hiring, training security forces | Overruled in part | Supplemental production limited to otherwise responsive documents re: Liberian government | May lead to admissible evidence re: state action (and Defendants are already providing all documents re: child labor) |
| RFP 33 | Documents re: human rights policies given to security forces | Sustained | n/a | Defendants are already producing all documents re: child labor |
| RFP 34 | Documents re: qualifications for security forces | Overruled in part | Supplemental production limited to otherwise responsive documents re: Liberian government | May lead to admissible evidence re: state action (and Defendants are already providing all documents re: child labor) |

| RFP 35 | Documents re: duties of security forces | Overruled in part | Supplemental production limited to otherwise responsive documents re: Liberian government | May lead to admissible evidence re: state action (and Defendants are already providing all documents re: child labor) |
|---|---|---|---|---|
| RFP 37 | Documents re: guidelines from Liberian government about organizing private security forces | Overruled | n/a | May lead to admissible evidence re: state action |
| RFP 38 | Documents re: arrests of minors | Overruled in part | Supplemental production limited to documents for arrests re: child labor; production subject to attorneys'-eyes only protective order[10] | May lead to admissible evidence re: enforcement of no-child-labor policy |
| RFP 39 | Personnel files and documents re: job duties for chiefs or heads of security | Overruled in part | Supplemental production limited to individuals with authority over areas where Plaintiffs live and allegedly work | May lead to admissible evidence re: enforcement of no-child-labor policy and re: state action |
| RFP 41-42 | Documents re: supervisors' understanding of human rights obligations | Sustained | n/a | Defendants are already producing all documents re: child labor |
| RFP 45 | Documents re: payments for Plantation security | Overruled in part | Supplemental production limited to otherwise responsive re: Liberian government | May lead to admissible evidence re: state action |

---

[10] Defendants advised that they have no electronic method to search arrest records and must do so by hand to determine the nature of the charge. Like personnel files, this may be another area appropriate to make the entire universe available to Plaintiffs for inspection.

| RFP 46 | Documents re: actions by security forces to intimidate tappers | Overruled in part | Supplemental production limited to security force members in areas where Plaintiffs live and allegedly work; from that initial universe, further limited to documents either re: Plaintiffs' families or re: child labor | May lead to admissible evidence re: damages, enforcement of no-child-labor policy, and state action |
|---|---|---|---|---|
| RFP 48-50 | Documents re: coercive actions from security forces vis-à-vis Defendants' employees, and complaints about them to legal authorities | Overruled in part | Supplemental production limited to security force members in areas where Plaintiffs live and allegedly work; from that initial universe, further limited to documents either re: Plaintiffs' families or re: child labor | May lead to admissible evidence re: damages, enforcement of no-child-labor policy, and state action |
| RFP 51 | Documents re: shipment of timber through the Plantation | Sustained | n/a | Too attenuated to state action (as Plaintiffs contend it is relevant) |
| RFP 52 | Documents about agreement(s) with the Taylor regime / Liberian government re: Plantation management/security | Overruled | n/a | May lead to admissible evidence re: state action |
| RFP 59 | Minutes from Board of Directors Meetings | Overruled in part | Supplemental production limited to otherwise responsive documents re: tapper job safety or re: the Liberian government | May lead to admissible evidence re: state action, dangerousness of work (Defendants are already providing documents re: tapper workloads and child labor) |

| RFP 61 | Documents identifying individuals involved in negotiating Plantation lease extension from Liberian government | Overruled | n/a | May reveal witnesses who may have knowledge about state action |
|---|---|---|---|---|
| RFP 62-64 | Documents identifying Defendants' assets in Liberia and documents re:  financial guarantees / arrangements to Plantation and re:  supplies Defendants purchased for the Plantation | Overruled | n/a | May lead to admissible evidence re: Defendants' ability to control day-to-day operations on the Plantation (and potentially be held liable for them) |
| RFP 77-79 | Documents re:  salary practices for tappers, deductions from their paychecks, and benefits | Overruled in part | Supplemental production limited to documents re: Plaintiffs' guardians, and/or guidelines re: work hours or days for tapping | May lead to admissible evidence re: degree of coercion / availability of alternatives to child labor, and whether work interferes with schooling |
| RFP 81-82 | Guidelines and similar documents re:  policies for providing housing on Plantation and renovations to housing | Sustained | n/a | Not relevant to whether Plaintiffs' guardians had too much work to complete without Plaintiffs' help |
| RFP 84 | Documents re:  potable water and sanitation on the Plantation | Sustained | n/a | Not relevant to whether Plaintiffs' guardians had too much work to complete without Plaintiffs' help |

| RFP 94 | Documents re: enrollment levels in schools | Overruled in part | Supplemental production limited to records re: Plaintiffs' enrollment/attendance | May lead to admissible evidence re: whether alleged work harms Plaintiffs' well-being |
|--------|--------|--------|--------|--------|
| RFP 95 | Documents re: salary deductions for education | Sustained | n/a | Not relevant to whether Plaintiffs' guardians had too much work to complete without Plaintiffs' help |
| RFP 96-97 | Documents re: locations and numbers of schools on Plantation | Overruled in part | Defendants to produce the information referenced during oral argument at Tr. 46:4-7. | Production ordered by agreement |
| RFP 98 | Documents re: hospitals and clinics | Overruled in part | Defendants to provide sworn interrogatory answer setting forth, for each year in the discovery period, (1) the specific locations of medical facilities that were open in the areas where Plaintiffs lived and claim to have worked, (2) the hours of those facilities, and (3) a description of the extent to which those facilities could treat the types of injuries occasioned by the work Plaintiffs allegedly performed | May lead to admissible evidence re: degree to which the alleged work endangered Plaintiffs' health |
| RFP 118 | Documents re: payments to or benefits to government employees for work on the Plantation | Overruled | n/a | May lead to admissible evidence re: state action |

| RFP 120 | Documents re: termination of tappers | Overruled | Supplemental production subject to attorneys'-eyes-only protective order | Defendants have agreed to make personnel files available for inspection. [Dkt. No. 152 at 20.] |
|---|---|---|---|---|
| RFP 127 | Personnel files and documents re: job duties for members of security forces | Overruled in part | Supplemental production limited to individuals with authority over areas where Plaintiffs live and allegedly work | May lead to admissible evidence re: enforcement of no-child-labor policy and state action |
| RFP 132-33 | Documents from 1915-35 re: Defendants' acquisition of the Plantation and workers to work on it | Sustained | n/a | Too distant in time to liability period to lead to information about state action |
| RFP 134 | Documents re: lobbying efforts for the Tariff Act of 1930 | Sustained | n/a | Plaintiffs have asserted, without explanation, that these documents are relevant. Given the passage of time since the Act was passed, the Court disagrees. |
| RFP 149 | Documents re: negotiations for better housing on Plantation | Sustained | n/a | Not relevant to whether Plaintiffs' fathers had too much work to complete without Plaintiffs' help |
| RFP150-51 | Documents re: sales of goods and utilities to tappers | Overruled in part | Supplemental production limited to otherwise responsive documents re: items purchased by Plaintiffs' guardians or available for purchase by them | May lead to admissible evidence re: alternatives to use of child labor |

| | | | | |
|---|---|---|---|---|
| RFP 153 | Documents re: living and working conditions of tappers | Sustained in part | Supplemental production limited to otherwise responsive documents re: working conditions for Plaintiffs' guardians (or Plaintiffs) | May lead to admissible evidence re: dangerousness of work |
| RFP 159 | Documents about tax payments for the plantation | Sustained, but without prejudice to a later motion to compel | n/a | *See supra* at Section D(10). |
| RFP 162 | Documents Defendants have provided to the University of Akron for placement in historical archives | Overruled in part | Defendants shall provide authorization for Plaintiffs to inspect the documents (but Defendants need not search through them); Plaintiffs shall provide Defendants with copies of anything that Plaintiffs copy from the archives | May lead to admissible evidence re: state action, and no burden to allow Plaintiffs to inspect documents already maintained at a third-party's library |
| Interrog. 7 | Identify individuals who helped plan / monitor compliance with human rights laws | Overruled in part | Identification limited to child labor issues | May lead to admissible evidence re: Defendants' understanding of international law obligations and whether they complied with what they understood them to be |
| Interrog. 10 | Identify individuals responsible for creating or changing policies re: safety measures for tappers | Overruled | | May lead to admissible evidence re: the dangerousness of Plaintiffs' alleged work |

| Interrog. 11 | Identify complaints of human rights abuses | Overruled in part | Identification limited to alleged child labor violations | May lead to admissible evidence re: Defendants' knowledge of alleged child labor on the Plantation |
|---|---|---|---|---|
| Interrog. 12 | Identify individuals who responded to allegations of violence / threats toward employees | Sustained in part | Identification limited to individuals re: (1) Plaintiffs' families or (2) child labor | May lead to admissible evidence re: alleged coercion of Plaintiffs' guardians and Defendants' knowledge of alleged child labor |
| Interrog. 22 | Identify the custodian of records for the archives at the University of Akron and those documents re: the Plantation | Sustained in part | Identification limited to the custodian of records. (Plaintiffs will have to consult the archive to see what is available.) | May lead to admissible evidence re: state action |

Defendants shall provide the supplementation ordered above within thirty (30) days; however, no further order of Court is necessary for a thirty (30) day extension if Plaintiffs consent to it in writing. Any privilege log shall be served concurrently with the supplementation.

**Distribution via ECF:**

Nicole N. Auerbach
THE VALOREM LAW GROUP
nicole.auerbach@valoremlaw.com

Terrence P. Collingsworth
CONRAD & SCHERER
tc@conradscherer.com

Katie J. Colopy
JONES DAY
kjcolopy@jonesday.com

C. Christopher Groves
JONES DAY
cgroves@jonesday.com

Paul L. Hoffman
SCHONBRUN DESIMONE SEPLOW HARRIS & HOFFMAN
723 Ocean Front Walk
Suite 100
Venice, CA 90291

Kimberly Denise Jeselskis
MACEY SWANSON AND ALLMAN
kjeselskis@maceylaw.com

Virginia  Kim
THE VALOREM GROUP, LLC
35 East Wacker Drive, Suite 2900
Chicago, IL 60601

Patrick J. Lamb
THE VALOREM LAW GROUP, LLC
patrick.lamb@valoremlaw.com

Christian Alexandra Levesque
CONRAD & SCHERER
cl@conradscherer.com

Barry A. Macey
MACEY SWANSON AND ALLMAN
bmacey@maceylaw.com
Nora L. Macey
MACEY SWANSON AND ALLMAN

nmacey@maceylaw.com

Mark J. R. Merkle
KRIEG DEVAULT LLP
mmerkle@kdlegal.com

Robert A. Mittelstaedt
JONES DAY
ramittelstaedt@jonesday.com

Marc T. Quigley
KRIEG DEVAULT LLP
mquigley@kdlegal.com

Thomas A. Rector
JONES DAY
tarector@jonesday.com

Michael L. Rice
JONES DAY
mlrice@jonesday.com

Mark D. Sayre
THE VALOREM LAW GROUP LLC
mark.sayre@valoremlaw.com

Benjamin  Schonbrun
SCHONBRUN DeSIMONE SEPLOW HARRIS & HOFFMAN, LLP
schonbrun.ben@gmail.com

Natacha  Thys
CONRAD & SCHERER
nt@conradscherer.com

Hugh J. Totten
THE VALOREM LAW GROUP
hugh.totten@valoremlaw.com