NOT INTENDED FOR PUBLICATION IN PRINT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BOIMAH FLOMO *et al.*, | ) | |
|    *Plaintiffs*, | ) | |
| | ) | |
|    *vs.* | ) | 1:06-cv-00627-DFH-JMS |
| | ) | |
| BRIDGESTONE AMERICAS HOLDING, INC. *et* | ) | |
| *al.*, | ) | |
|    *Defendants.* | ) | |

## ORDER

Presently before the Court is Defendants' Expedited Motion to Compel Further Interrogatory Responses as to Whether Minor Plaintiffs Are Working in Violation of the Collective Bargaining Agreement and Firestone Liberia Policy (the "Motion to Compel"). [Dkt. No. 217.]

### A REMINDER ABOUT CIVILITY

Before turning to the Motion to Compel, the Court would like to remind *pro hac vice* counsel that, as a condition of being granted leave to appear in this case, they agreed to abide by the Standards for Professional Conduct Within the Seventh Federal Judicial Circuit.[1]  Among other things, those Standards require counsel to treat one another "in a civil and courteous manner, not only in court, but also in all other written and oral communications." Lawyers' Duties to Other Counsel, Standard 1.

After reviewing the papers submitted, the Court expresses its disappointment that counsel, on both sides, have not exhibited to one another the civility that the Standards require. Hypothesizing—with no evidence presented—that opposing counsel is perpetrating a fraud upon

---

[1] The Standards are available on the Court's website.

the Court is inappropriate.  [*See* Dkt. No. 218 at 11.]  So too is any reference to an opposing

counsel's mother.  [Dkt. No. 232-4 at 3.]

As the parties' local counsel can attest, the Court and practitioners in this District enjoy a

deliberately civil (and indeed, collegial) practice of law.  The Court intends to make sure that it

stays that way.  Hopefully, this will be the only civility reminder necessary.

## BACKGROUND

The active motion practice in this case has given the Court multiple opportunities to

detail, in previous entries, Plaintiffs' underlying claims.  [*See, e.g.*, Dkt. No. 165 (denying class

certification).]  For present purposes, it simply suffices to say that Plaintiffs are minors who

claim that Defendants have forced them to perform dangerous and difficult work on a rubber

plantation in Liberia, in violation of international law that prohibits the "worst" forms of child

labor.  The force allegedly used to compel their work is not physical.  Rather, Plaintiffs say that

Defendants assign their guardians more work than can actually be performed in a day; therefore,

their guardians enlist them to help rather than suffer a reduction in pay.  Although Plaintiffs'

guardians once asserted their own claims about their excessive workload, the Court dismissed

those claims, thus making Plaintiffs' alleged work the focus of this case.  [*See* Dkt. No. 40 at 74.]

Plaintiffs seek recovery for their labor dating from 1995 to the present.  Plaintiffs say that

the plantation did not have a no-child-labor policy at all until 2000, and only then one that was

completely unenforced.  [*See* Dkt. No. 229 at 33-39.]  That policy was revised to a zero-tolerance

one in 2005; however, Plaintiffs say that it has only been sporadically enforced and thus

is ineffective at stopping the child labor.  [*See id*.]

The Motion to Compel seeks to require Plaintiffs to supplement and/or answer interrogatories about the extent of the child labor that Plaintiffs claim has occurred on the plantation, particularly any labor that Plaintiffs claim to continue to perform.[2]

## ANALYSIS

The Federal Rules of Civil Procedure permit liberal discovery to make "trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958).  Thus, parties may discover "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. Pro. 26(b)(1).  The courts construe relevancy "broadly to encompass any matter that bears on, or that reasonably could lead to any other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). *See also Gatewood v. Stone Container Corp.*, 170 F.R.D. 455, 458 (S.D. Iowa 1996) ("It is not too strong to say that a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." (quotation omitted)).  So long as the proposed discovery "appears reasonably calculated to lead to the discovery of admissible evidence," discovery is proper, even though the information sought itself may not be admissible at trial.  Fed. R. Civ. Pro. 26(b)(1).

Generally speaking, Plaintiffs do not dispute the relevance of Defendants' interrogatories. Rather, they claim that disclosing whether their guardians continue to make them work will cause Defendants to fire their guardians, for violating the zero-tolerance policy against child labor.  And they claim that work-product immunity permits them to withhold both reports of

---

[2]   Defendants also seek attorneys' fees and costs under Federal Rule of Civil Procedure 37(a)(5).

other children performing illegal child labor and the substance of what they have learned from interviewing Defendants' employees about child labor.

**A.  Disclosing Whether Plaintiffs Continue to Perform Child Labor**

Defendant Firestone Natural Rubber Company's ("FNRC") Interrogatory Number 7 asks each Plaintiff to state where and when each claims to have worked on the plantation since 1995, what work each claims to have performed, and which employee each claims to have been helping at the time.  [Dkt. No. 219-2 at 5.]  In March 2008, Plaintiffs answered this interrogatory without objection.  [Dkt. No. 219-3 at 3.]  In the case of Plaintiff Alex Varnie, for example, he answered that he worked in the fields from 2004-2005, helping his father.  [*Id.*][3]

Once a party responds to a written discovery request, the Federal Rules of Civil Procedure require the party to automatically, and timely, supplement its previous response "if the party learns that in some material respect the…response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. Pro. 26(e)(1)(A).  (Additionally, a duty to supplement arises whenever ordered by the Court.  *Id.* at 26(e)(1)(B).)

In their response to the Motion to Compel, Plaintiffs say, in a footnote, that they have no duty to supplement FNRC Interrogatory Number 7 because they possess no information not already disclosed in discovery that materially alters or renders incomplete their original interrogatory answers to it.  [Dkt. No. 232 at 4 n.12.]  Such a claim stands in stark tension with the more than five pages of argument that they develop about the All Writs Act, 28. U.S.C. § 1651.  They claim that that Act should prevent supplementation of this interrogatory answer entirely, or at least prevent Defendants from enforcing the zero-tolerance policy (as Defendants

---

[3]   Defendants have not filed the answers that the other twenty-two Plaintiffs provided to this interrogatory.

have indicated they will do [Dkt. No. 233 at 7]) if Plaintiffs say their guardians have used them to help work on the plantation since their depositions.  But the more recent information, if true, is clearly responsive to the interrogatory, renders the prior answer incomplete, and therefore requires supplementation.  Fed. R. Civ. Pro. 26(e)(1)(A).

Their claim also stands in tension with Plaintiffs' refusal to answer Defendant Firestone Natural Rubber Company LLC's ("FNRC LLC") Interrogatory Number 3.  That interrogatory specifically asks Plaintiffs whether they have worked for their guardians since their 2008 depositions and, if so, whether any of Defendants' other employees knew about or condoned the work.  [Dkt. No. 219-4 at 6.]  Plaintiffs have objected to answering that interrogatory for the same reason that they do not want to supplement their answer to FNRC Interrogatory Number 7: Defendants will fire Plaintiffs' guardians if the guardians have in fact violated the Defendants' zero-tolerance policy against using child labor.  [Dkt. No. 218 at 9.][4]  The Court will turn to that objection now.

*1.  Adverse Consequences to Plaintiffs' Guardians as a Basis to Resist Discovery*

Plaintiffs seek to protect their guardians from enforcement of Defendants' zero-tolerance policy by invoking the All Writs Act.  That Act authorizes a court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  To the extent that Plaintiffs contend that that Act authorizes a writ prohibiting Defendants from "retaliating" against them by enforcing the zero-tolerance policy against their guardians if they provide interrogatory answers saying that their guardians are still making them work, the Court cannot entertain that request at this time.  Plaintiffs may not

---

[4]   While Plaintiffs' written response asserts additional objections, including the infamous but useless discovery objection "overly broad, unduly burdensome, and vague," they have abandoned those objections by not arguing them in response to the Motion to Compel.

incorporate a motion into a response brief, L.R. 7.1(a).  Any motion based upon the All Writs

Act motion must be filed separately, so that it can be properly briefed by both sides. [5]

The Court can, however, consider Plaintiffs' request that the Court permit them to

completely avoid discovery about their work history.  But the Court need not actually trudge

through the tangle of cases interpreting what the All Writs Act does and does not permit.  Where,

as here, "a statute specifically addresses the particular issue at hand, it is that authority, not the

All Writs Act, that is controlling."  *Penn. Bureau of Correction v. United States Marshals Serv.*,

474 U.S. 34, 43 (1985).  Plaintiffs' fear that providing the discovery will cause their guardians to

be fired qualifies as potential "oppression" that could authorize the denial of discovery, upon a

showing of good cause, under Federal Rule of Civil Procedure 26(c)(1)(A).  The Court will,

therefore, examine Plaintiffs' argument on that basis.

Applying traditional discovery principles, Defendants are entitled to know whether

Plaintiffs maintain that they have continued to work; good cause does not permit Plaintiffs to

avoid discovery.    At trial, Plaintiffs will testify about the extent to which they claim that they

have worked on the plantation.  The Complaint and, as Defendants correctly point out, Plaintiffs'

proposed Amended Complaint both allege that Plaintiffs' guardians continue to make Plaintiffs

work on the plantation.  [Dkt. Nos. 2 ¶¶12-23; 206-2 ¶¶11-33.]

The forum that Plaintiffs have selected for this lawsuit (challenging conduct occurring in

Liberia) guarantees civil litigants the opportunity to know well in advance of trial what witnesses

will say on the stand.  *Cf. Murray v. Conseco*, 2008 U.S. Dist. LEXIS 107593 (S.D. Ind. 2008)

("Discovery is not a game of hide-and-seek[.]"), *aff'd in relevant part*, 2009 U.S. Dist. LEXIS

---

[5] The Court notes that the Defendants' reply brief only has one paragraph squarely addressing
the All Writs Act.   [Dkt. No. 233 at 9.]  The bulk of their argument relies upon the discovery
provision of the Federal Rules of Civil Procedure, under which Defendants filed their Motion to
Compel.

9030 (S.D. Ind. 2009). This principle is all the more fundamental when the witnesses are the opposing parties and when the information at issue is the very basis upon which they are suing the Defendants. Thus, it comes as no surprise that Plaintiffs' counsel interposed no objection when Plaintiffs initially answered FNRC's Interrogatory Number 7 about the extent of Plaintiffs' work history. Nor did counsel object when Defendants inquired about Plaintiffs' work history during Plaintiffs' depositions. Indeed, Plaintiffs' counsel went so far as to even solicit testimony about the topic during at least one Plaintiff's deposition. [*See* Dkt. No. 227-4 at 2 ("Q: Last month when you helped your father apply medicine on the farm, how many days of the weekend did you work? A: Many days, but I don't remember.")]. Defendants cannot properly defend themselves without knowing when Plaintiffs claim that their guardians made them work; therefore, "good cause" does not permit Plaintiffs to withhold that information.

Further, the forum that Plaintiffs have selected routinely refuses to let litigants selectively disclose information only when, and to the extent, that disclosure suits their present purpose; sword-and-shield litigation tactics are anathema to the Federal Rules' discovery provisions. *See Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 132 F.R.D. 204, 207 (N.D. Ind. 1990) (calling selective disclosure "truth garbling"). Plaintiffs' briefing on this, and other motions, have been rife with allegations that Defendants continue to permit child labor to occur on the plantation.[6] Having made such allegations, our adversarial system requires that Defendants be entitled to explore the factual basis for them during discovery.

---

[6] [*See, e.g.*, Dkt. No. 232 at 3 (accusing Defendants of not enforcing their "purported" zero-tolerance policy), 4 ("[c]hild labor is still a main-stay of the Firestone Plantation system."), 8 (accusing Defendants of a "deliberate disregard" of "paper policies" against child labor); Dkt. No. 229 at 9 (denying that Defendants have ever "take[n] effective steps to change its prior policy and practice of using child labor and effectively implement a no-child labor policy"), 10 (arguing that "Firestone has yet to stop its long-standing policy of exploiting children"), 22 ("Plaintiffs are seeking an end to a system in which Firestone has been utilizing forced child

The magistrate recognizes that revealing that their guardians have violated the zero-tolerance policy may result in adverse consequences to Plaintiffs' guardians.  Such a result may well also adversely affect Plaintiffs, who live in a country full of poverty and high unemployment.  But because the requested information goes to the heart of their case, it is relevant and must, under our discovery rules, be provided during discovery.

Ordinarily, claims of prejudice during discovery can be obviated through an attorneys'-eyes-only confidentiality order.  *See* Fed. R. Civ. Pro. 26(c)(1).  Such an order is not, however, appropriate here.  In denying Defendants' motion to dismiss, the Court determined that if Plaintiffs can establish at trial the allegations made in their Complaint about the work that they claim to have done and continue to do, Plaintiffs will have established a "worst" form of child labor that violates international law.  [Dkt. No. 40 at 67 (finding that Count II states a claim for relief).]  The Court will not use its authority to hide possibly illegal child labor from Defendants, whom Plaintiffs say are capable of—and indeed responsible for—stopping it.

Under our discovery rules, Plaintiffs must supplement FNRC Interrogatory Number 7 and answer FNRC LLC Interrogatory Number 3.  The discovery rules say nothing about what actions Defendants may or may not take against Plaintiffs' guardians for any violations of Defendants' no-child-labor policy upon receiving that information.[7]

---

labor and requiring children to work long hours under hazardous conditions, to the detriment of their education."), 23 (accusing Defendants of maintaining a "present system of relying upon child labor"), 24 (characterizing Defendants' zero-tolerance policy as "un-enforced and unimplemented"), 25 (stating that the conditions requiring child labor remain "[e]ven today"), 33 ("Plaintiffs dispute any factual assertion by Firestone that issued or implemented an effective [anti-child-labor policy] to change 80 years of exploitive practices"), 33-39 (arguing that the zero-tolerance policy is a "paper tiger").]

[7] FNRC Interrogatory Number 11, which Plaintiffs answered in March 2008, asked Plaintiffs to identify everyone else whom they contend worked on the plantation since 1995 who was under fifteen at the time.  [Dkt. No. 219-2.]  Defendants include this among the interrogatories upon which they are moving to compel; however neither party explicitly addressed it in their papers.

### 2.   *Limiting the Damage Period to Avoid Supplementation*

Plaintiffs have argued that, if they must disclose whether they have worked on the plantation since their depositions, they will drop any claims for damages after their April 2008 depositions.  [Dkt. No. 232 at 9.]  That way, they say, any work that they are performing for their guardians will be irrelevant and thus nondiscoverable.  [*Id.*]

Such an approach, however, would not obviate the need to provide the requested information.  As Plaintiffs wish to seek injunctive relief even under their proposed narrowed claims [*id.*], Plaintiffs would still be expected to testify at trial—and therefore disclose in discovery—whether their guardians are still making them work.  For if Plaintiffs are not currently performing a "worst" form of child labor, there is nothing for the Court to enjoin.  And in any event, as Defendants correctly point out, if it turns out that Plaintiffs' guardians are currently able to complete their work without enlisting Plaintiffs, that evidence is relevant toward whether, in the past, the guardians were in fact effectively forced to rely on Plaintiffs.

### B.  Disclosing Other Reports of Child Labor

In previous briefing, Plaintiffs' counsel advised that they have "continue[d] to receive reports that child labor continues on the Plantation today despite Defendants' assertions to the contrary."  [Dkt. No. 184 at 12.]  In response, Defendant FNRC LLC served Interrogatory Number 1, which asks Plaintiffs to identify each such report, including "how it was made," who made and received it, and what the substance of the report was.  [Dkt. No.  219-4 at 4-5.]

Plaintiffs argue that they should not have to answer FNRC LLC's Interrogatory Number 1 on work-product grounds.  The "reports" at issue are information that Plaintiffs' counsel

---

Given that this interrogatory, in part, asks each Plaintiff about the work history of other Plaintiffs, the arguments about FNRC Interrogatory Number 7 largely apply to Interrogatory Number 11 too.  For the same reasons then, Plaintiffs must supplement Interrogatory Number 11 if, since March 2008, they now recall additional individuals who have worked on the plantation.

learned during interviews of potential witnesses, information that was never reduced to formal written witness statements. [*See* Dkt. No. 232 at 16.] Disclosing this information, they say, will reveal their counsel's "mental impressions, conclusions, opinions, or legal theories," information protected from disclosure as opinion work product. Fed. R. Civ. Pro. 26(b)(3)(B).

Such opinion work-product revelations, if true, would be "out of bounds" because "the opponent shouldn't be allowed to take a free ride on the other party's research, or get the inside dope on that party's strategy, or…invite the jury to treat candid internal assessments of a party's legal vulnerabilities as admissions of guilt." *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 768 (7th Cir. 2006) (citation omitted).

Nonetheless, when a party is served with an interrogatory, it must provide answers reflecting the information that is available to it from any source, even from its attorneys. *Hickman v. Taylor*, 329 U.S. 495, 505 (1947) ("A party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney."); *see also Bd. of Ed. v. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23, 32 (N.D. Ill. 1984) ("It is settled law…that the work product concept furnishes no shield against discovery by interrogatories…of the facts that the adverse party's lawyer has learned, or the persons from whom he has learned such facts, or the existence of documents, even though the documents themselves may not be subject to discovery." (quotation omitted)). So long as the interrogatories focus on "knowledge of witnesses" and not on the "actions of lawyers," no work-product concerns are possibly implicated. *E.E.O.C. v. Collegeville/Imagineering Ent.*, 2007 WL 1089712, *1 (D. Ariz. 2007). In that circumstance, the other side cannot "track the steps" of counsel, *id.*, and thus potentially get a free ride on opinion work product.

Plaintiffs are concerned that the detailed nature of FNRC LLC Interrogatory Number 1 may allow Defendants to track counsel's steps. If, for example, Plaintiffs disclose that Mr. Jones provided five different oral "reports" to Plaintiffs' counsel, and to a larger and larger number of Plaintiffs' counsel each time, Defendants might deduce that counsel deems Mr. Jones a key witness.

The Court will not, however, decide whether that interrogatory delves into opinion work-product because the Court finds that it is "unreasonably cumulative or duplicative" of FNRC LLC's Interrogatory Number 2 and thus impermissible. Fed. R. Civ. Pro. 26(b)(2)(C)(i). That latter interrogatory, which is also the subject of the Motion to Compel, will provide Defendants essentially the same information, but in a way that has no bearing on whom counsel did or did not speak to. It asks Plaintiffs to list the children whom Plaintiffs contend have worked on the plantation since the lawsuit was filed, what work those children allegedly performed, where they performed it, when they performed it, and the individuals who have knowledge about it. [Dkt. No. 219-4 at 6.][8]

While Plaintiffs have objected to answering FNRC LLC's Interrogatory Number 2 on work-product grounds too, they have offered no cogent argument to support their objection. They have, instead, merely asserted in a footnote that answering it implicates the same work-product concerns that the other interrogatories do. [*See* Dkt. No. 232 at 15 n.10.] That does not suffice. *United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is a good point despite a lack of supporting authority or in the face of contrary authority, forfeits the point." (emphasis and citations omitted)); *see* Fed. R. Civ. Pro. 26(b)(5) (placing burden on party

---

[8] The interrogatory excludes information previously provided during depositions and in other interrogatory responses.

asserting work-product immunity).  Indeed, the interrogatory seeks precisely the sort of factual information discoverable under *Hickman*  and its progeny.

The objection is also a opportunistic given that FNRC LLC's Interrogatory Number 2 seeks basically reciprocal information to that which Plaintiffs requested in—and received when they filed their own motion to compel over—Plaintiffs' Interrogatory Number 11.  [Dkt. No. 215 at 29 (granting motion to compel for interrogatory 11 with respect to child labor only); Dkt. No. 146-3 at 13 (requesting identification of all formal and informal complaints of child labor and human rights abuses, including the dates of, makers of, and substance of the complaints, whether known to Defendants or only to their attorneys).]

Thus, the Court will overrule Plaintiffs' objections to FNRC LLC's Interrogatory Number 2, but under Fed. R. Civ. Pro. 26(b)(2)(C)(i) will excuse Plaintiffs' from answering FNRC LLC's Interrogatory Number 1.

### C.  Disclosing Counsel's Contacts with Defendants' Current Employees

Previously, the Court was called upon to assess the propriety of Plaintiffs' Liberian counsel's (Mr. Brownell) contacts with so-called headmen, which are the first-level supervisors for Plaintiffs' guardians.  [Dkt. No. 166.]  In connection with that dispute, Defendant Bridgestone Firestone North American Tire LLC ("BFNAT") served interrogatories on Plaintiffs designed to undercover both the extent and substance of those contacts, and of any other employee contacts (besides with Plaintiffs' guardians).  [Dkt. Nos. 195-2; 219-6.]  To enable the Court to accurately assess the propriety of the contacts, the Court ordered Plaintiffs to file their responses to the interrogatories.  [Dkt. No. 195.]  Plaintiffs objected to all the interrogatories on work-product grounds (and other grounds that they do not press here).  [Dkt. No. 195-2.]  They did, however, have Mr. Brownell file an affidavit about the contacts that described them as non-

substantive, at least vis-à-vis this case, even though Mr. Brownell's affidavit omitted the headmen's names out of fear of possible retaliation against them.  [Dkt. No. 195-4.]  After examining the affidavit, the Court determined that Indiana Rule of Professional Conduct 4.2 prohibited *ex parte* contact with the headmen, but declined to impose any sanction because the contacts were non-substantive and because they were undertaken without knowledge of anyone who was admitted to practice in this Court (and therefore subject to Rule 4.2).  [Dkt. No. 204.]

Defendants' Motion to Compel now seeks answers to at least some of those previously posed interrogatories.  Specifically, they move to compel on BFNAT Interrogatory Number 2, which seeks disclosure of which headmen from a specified list Plaintiffs' counsel contacted, and on BFNAT Interrogatory Number 4, which asks what counsel and those identified headmen said during the contact.   [Dkt. No. 219-7 at 4-5.] [9]   They also move to compel on BFNAT Interrogatory Numbers 6-9, which seek to determine whether Plaintiffs' counsel has contacted any current employee not on the list (besides Plaintiffs' guardians) and, if so, what counsel and the employee(s) said.  [*Id.* at 6-7.]

The Court will not, however, order Plaintiffs to answer any of these interrogatories, which are specifically phrased to inquire about what Plaintiffs' counsel did and therefore have drawn the unsurprising opinion work-product objection (among others).  As Defendants have advised, these interrogatories were only necessary after Plaintiffs' counsel indicated ongoing reports of child labor and had refused to answer FNRC LLC's Interrogatory Number 2, requesting all facts showing ongoing child labor, and had refused to supplement FNRC's Interrogatory Number 11, about Plaintiffs' work history.  [Dkt. No. 218 at 8.]  Because the Court

---

[9] Plaintiffs indicate that they do not have any more responsive information beyond that contained in Mr. Brownell's affidavit, and they will revise their response (and verify it) accordingly.  [Dkt. No. 232 at 11 & n.8.]  They are ORDERED to do so with their supplemental responses.

has now ordered Plaintiffs to do just that, BFNAT's interrogatories are cumulative and thus improper. Fed. R. Civ. Pro. 26(b)(2)(C)(i).[10] The Court, therefore, need not decide the merits of Plaintiffs' work-product claims.

### CONCLUSION

Defendants' Motion to Compel is **GRANTED** with respect to FNRC's Interrogatory Numbers 7 and 11 and to FNRC LLC's Interrogatory Numbers 2-3, the objections to all of which are **OVERRULED**. The Motion to Compel is **DENIED** in all other respects. Plaintiffs shall serve their verified answers / supplementations no later than **June 24, 2009**. Defendants shall file a fee petition, if any, under Federal Rule of Civil Procedure 37(a)(5) no later than **June 22, 2009**, to which Plaintiffs shall respond no later than **June 29, 2009**. Defendants shall reply, if at all, no later than **July 2, 2009**.

06/16/2009

Jane Magnus-Stinson
United States Magistrate Judge
Southern District of Indiana

---

[10] The Court does note that Plaintiffs argued that the names of the headmen whom Mr. Brownell interviewed are "irrelevant." [Dkt. No. 232 at 10.] The Court disagrees. Because Mr. Brownell claims that they indicated knowledge about ongoing child labor [Dkt. No. 195-4 ¶11], Plaintiffs should have—automatically—disclosed their names to Defendants and briefly described the nature of their knowledge. *See* Fed. R. Civ. Pro. 26(a)(1)(A)(i), 26(e)(1). As indicated above, if Plaintiffs believe that Court-ordered relief is necessary to prevent or remediate "retaliation," they must file a separate motion to that effect. That belief is no basis to avoid mandatory disclosure.

**Distribution via ECF only:**

Nicole N. Auerbach
THE VALOREM LAW GROUP
nicole.auerbach@valoremlaw.com

Terrence P. Collingsworth
CONRAD & SCHERER
tc@conradscherer.com

Katie J. Colopy
JONES DAY
kjcolopy@jonesday.com

C. Christopher Groves
JONES DAY
cgroves@jonesday.com

Paul L. Hoffman
SCHONBRUN DESIMONE SEPLOW HARRIS & HOFFMAN
723 Ocean Front Walk
Suite 100
Venice, CA 90291

Kimberly Denise Jeselskis
MACEY SWANSON AND ALLMAN
kjeselskis@maceylaw.com

Virginia  Kim
THE VALOREM GROUP, LLC
35 East Wacker Drive, Suite 2900
Chicago, IL 60601

Patrick J. Lamb
THE VALOREM LAW GROUP, LLC
patrick.lamb@valoremlaw.com

Christian Alexandra Levesque
CONRAD & SCHERER
cl@conradscherer.com

Barry A. Macey
MACEY SWANSON AND ALLMAN
bmacey@maceylaw.com

-15-

-16-

Nora L. Macey
MACEY SWANSON AND ALLMAN
nmacey@maceylaw.com

Mark J. R. Merkle
KRIEG DEVAULT LLP
mmerkle@kdlegal.com

Robert A. Mittelstaedt
JONES DAY
ramittelstaedt@jonesday.com

Marc T. Quigley
KRIEG DEVAULT LLP
mquigley@kdlegal.com

Thomas A. Rector
JONES DAY
tarector@jonesday.com

Michael L. Rice
JONES DAY
mlrice@jonesday.com

Mark D. Sayre
THE VALOREM LAW GROUP LLC
mark.sayre@valoremlaw.com

Benjamin  Schonbrun
SCHONBRUN DeSIMONE SEPLOW HARRIS & HOFFMAN, LLP
schonbrun.ben@gmail.com

Natacha  Thys
CONRAD & SCHERER
nt@conradscherer.com

Hugh J. Totten
THE VALOREM LAW GROUP
hugh.totten@valoremlaw.com