UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BOIMAH FLOMO, *et al.*, <br>     *Plaintiffs*, <br><br> *vs.* <br><br> BRIDGESTONE AMERICAS HOLDING INC., *et al.*, <br>     *Defendants*. | 1:06-cv-00627-DFH-JMS |

# ORDER

Before the Court is Plaintiffs' Expedited Motion to Compel the Depositions of Headmen on the Firestone Liberia Plantation or, in the Alternative, Motion for Permission to Contact Headmen for Limited Purpose of Scheduling Depositions (the "Motion to Compel"). [Dkt. 252.]

## BACKGROUND

As this Court has explained previously (and in greater detail), Plaintiffs have but one legally cognizable claim in this case: These minors have alleged that Defendants made them perform work on a rubber plantation in Liberia that qualifies as a "worst," and thus prohibited, form of child labor under international law. [*See, e.g.*, Dkt. 215 at 1-2.] The force allegedly used was not physical. Rather, Plaintiffs say that their guardians were (and are) knowingly assigned too much work for any one person to perform; and, to avoid losing employment and housing in one of the poorest countries on earth, their guardians would (and still must) conscript them to complete it. [*See id.* at 1.]

Defendants have recently filed a motion for summary judgment. [Dkt. 208.] The Chief Judge has granted Plaintiffs a Fed. R. Civ. Pro. 56(f) continuance to and including October 9, 2009 to complete any "needed" discovery and to prepare their response. [Dkt. 234.] Because

1

many of the documents and witnesses that relate to this case come from half a world away, this deadline is effectively a short one.

Plaintiffs now seek to compel Defendants to produce seventeen field-level supervisors, called "headmen," from the Defendants' non-party affiliate that owns and operates the plantation where Plaintiffs allegedly perform those worst forms of child labor.[1] Alternatively, if Defendants cannot be compelled to make the headmen available for depositions because the headmen are not "managing agents" for the purposes of Fed. R. Civ. Pro. 30(b)(6) (and, as Liberian residents, are outside the Court's subpoena power, *see id.* 45(a)(2)), then Plaintiffs request authorization under Ind. R. Prof. Cond. 4.2 to contact them *ex parte* to see whether they will voluntarily submit to depositions.

## DISCUSSION

### A. Scope of Discovery Under the Federal Rules of Civil Procedure

Operating in tandem to help "secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. Pro. 1, two hallmarks characterize the discovery provisions that the Federal Rules of Civil Procedure provide.

First, the Rules afford parties liberal discovery. Parties can discover "any nonprivileged matter that is relevant to any [other] party's claim or defense." Fed. R. Civ. Pro. 26(b)(1). Courts construe relevance for discovery purposes "broadly to encompass any matter that bears on, or that reasonably could lead to any other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). *See*

---

[1] Originally, eighteen headmen were at issue. But because Defendants have already agreed to make available every witness on their witness list for depositions and because Defendants already listed one of those eighteen headmen (David Kerkula), the dispute only concerns seventeen headmen. [*See* Dkt. 263 at 5; 263-3 at 2.]

*also Gatewood v. Stone Container Corp.*, 170 F.R.D. 455, 458 (S.D. Iowa 1996) ("It is not too strong to say that a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." (quotation omitted)).

Second, the Rules empower the Court with considerable discretion to manage (among other things) the timing, extent, frequency, and manner of discovery. *See* Fed. R. Civ. Pro. 26(c); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 494-95 (7th Cir. 1996). In fact, the Court "must" use that discretion to deny technically proper discovery that is unreasonably cumulative or that would impose oppression or undue burden or expense. Fed. R. Civ. Pro. 26(b)(2)(C)(i), (iii). With respect to this particular discovery dispute, the Court's discretion must also be influenced by the current posture of this case, with the looming deadline for Plaintiffs' summary judgment response both a substantive and procedural priority. The Court has already emphasized that "given the limited time frame provided by the Court, priority in scheduling discovery shall be given to the topics identified in Plaintiffs' Rule 56(f) affidavit...." [Dkt. 235 at 1.]

### B. Deposing the Requested Seventeen Headmen

In their expedited motion, Plaintiffs ask this Court to declare the headmen as managing agents of Defendants under Fed. R. Civ. Pro. 30(b)(6), or to disregard the limits on subpoena power contained in Fed. R. Civ. Pro. 45, or else to excuse them from the ethical prohibitions that the Court has already found preclude *ex parte* contact with the headmen. [Dkt. 204.] Underscoring each of the alternative requests is Plaintiffs' claim that the seventeen headmen "**have** information concerning Firestone's systemic policy and practice of using child labor to maintain and perpetuate the system of latex production that has made Firestone profitable since 1926…[and] **have** information about the company's alleged enforcement, implementation, and

dissemination of its so-called 'zero-tolerance' policy against child labor." [Dkt. 253 at 6 (emphasis supplied).] Defendants do not contest that these topics qualify as "relevant" for general discovery purposes. [*See* Dkt. 263 at 8-9.] Rather, they say, deposing the headmen would be a waste of time and money and will, ultimately, be a distraction from ensuring a timely response to Defendants' pending motion for summary judgment. [*See id.*] Given Plaintiffs' own discovery responses, the Court agrees.

After the previous controversy concerning Plaintiffs' Liberian counsel's *ex parte* contact with the headmen, Defendants propounded discovery to learn the substance of those contacts, as well as any relevant factual information the headmen might have. The Court ordered the Plaintiffs to answer the discovery, over Plaintiffs' various objections. [*See* Dkt. 237.] But that order didn't put an end to it; Plaintiffs then sought clarification as to whether they had to disclose everything they knew about what the headmen might say about child labor. [Dkt. 256.] The Court reconfirmed that Plaintiffs did, in fact, have to do just that:

> [I]f the Plaintiffs believe that the headmen, whether because of interviews of counsel or because of their own conversations with the headmen, have knowledge that child labor has occurred since November 2005, the Plaintiffs must identify the headmen in response to … interrogatory [Number 2].[2] As indicated in footnote 10 of the order, if the Plaintiffs believe that the headmen have discoverable information about child labor predating November 2005, they must supplement their initial disclosures[3] with the information required under Fed. R.

---

[2] That Interrogatory reads in pertinent part as follows:

> State in as much detail as possible all facts and information showing that child labor occurred at Firestone Liberia after November 2005, including without limitation the IDENTITY of each person involved including the children and any Firestone Liberia employee (e.g. tappers, headmen, etc.) each such person's involvement, the nature …, location …, and date(s) of the child labor, and the IDENTITY of each person who was the source of each fact or piece of information provided in response to this interrogatory.

[Dkt. 219-4 at 6.]

[3] There is no evidence before the Court that Plaintiffs have supplemented their Rule 26 disclosures.

Civ. Pro. 26(a)(1)(A)(i), unless one of the conditions set forth in Fed. R. Civ. Pro. 26(e)(1)(A) is satisfied.

[Dkt. 257.]

After receiving that second order, Plaintiffs responded to Interrogatory Number 2, stating: "[The seventeen headmen] **may have** information concerning the use of child labor on the Firestone Liberia Plantation, but Plaintiffs do not possess any additional responsive details." [Dkt. 263-5 at 4 (emphasis supplied).]

Plaintiffs'—sworn—interrogatory response indicates nothing more than a mere possibility that these headmen possess any information about child labor. Thus, Plaintiffs' confident claim in their Motion to Compel that the headmen "will testify concerning Defendant's knowledge of child labor," [Dkt. 253 at 12] is unsupported by their discovery response and is speculative, at best.

Even assuming that the headmen could testify about child labor, the probative value of that testimony is minimal. As the Court has noted elsewhere, "[g]iven that class certification has been denied, it is headmen with knowledge of the named plaintiffs whose testimony would be most relevant" to this case. [Dkt. 204 at 8 n.6.] Defendants have already agreed to produce each of the twenty-one headmen who actually supervised Plaintiffs' guardians who were listed on Plaintiffs' trial witness list, so this dispute does not implicate those headmen. [Dkt. 263 at 8-9.] Rather, the dispute implicates whether Plaintiffs should be able to depose an additional seventeen headmen who have no connection to Plaintiffs. Whatever those headmen could say about work other non-parties on the plantation have performed, the present record establishes that they have nothing to offer about the central issue in this case—what work Plaintiffs actually did or did not perform.

Any relevant information that the seventeen additional headmen might possibly have is also largely cumulative of that already obtainable from the twenty-one headmen who actually supervised Plaintiffs' guardians. While the additional headmen will be able "to testify concerning instructions they received from common, centralized decision makers relating to the child labor policy that is—or is not—being enforced," [Dkt. 268 at 4], so too will the headmen who actually did or did not enforce that policy in the areas where Plaintiffs claim to have worked. Plaintiffs' guardians' supervisors will know the dates that they did (or did not) receive orders to "step up" enforcement of the anti-child labor policies so that Plaintiffs can determine, as alleged, that those enforcement efforts were timed to coincide with key dates in this case. [*Id.*][4]

To the extent that Plaintiffs argue that the depositions will help uncover information to be used in formulating injunctive relief on the plantation that "necessarily will affect children other than Plaintiffs," [*id.* at 3 (footnote omitted)], Plaintiffs are not focusing on the pending motion for summary judgment, which is the current priority. That motion seeks a judicial declaration that Defendants face no liability whatsoever, thereby precluding any form of injunctive relief.

The Court is charged with balancing "the burden or expense of proposed discovery with its likely benefit." Fed. R. of Civ. Pro. 26(b)(2) (iii). *See also Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 931 (7th Cir. 2004) (explaining that while "pretrial discovery is a fishing expedition and one can't know what one has caught until one fishes," the discovery rules allow

---

[4] Plaintiffs also suggest that they need to discover the extent of enforcement in other areas of the plantation to know whether the twenty-one headmen were "targeting" Plaintiffs for their participation in this lawsuit. Discovery into anti-child labor enforcement by headmen who worked miles away from Plaintiffs' guardians may have some probative value on this point, but not much. Far more relevant is the testimony of the twenty-one headmen who were, according to Defendants, charged with enforcing the anti-child labor policy against both Plaintiffs' guardians at key times, and the approximately 100 other workers that each supervised. [Dkt. 270 at 1.]

6

the fish to object). Africa is too far, Liberia is too dangerous, and time is too short for Plaintiffs go on what is—according to the present record—a fishing expedition for information that may not exist or may be available from more relevant sources.[5] And as required by Rule 26(b)(2), the Court cannot allow it.

## CONCLUSION

Plaintiffs' Motion to Compel is **DENIED**.

07/22/2009

Jane Magnus-Stinson
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF only:**

Nicole N. Auerbach
THE VALOREM LAW GROUP
nicole.auerbach@valoremlaw.com

Terrence P. Collingsworth
CONRAD & SCHERER
tc@conradscherer.com

Katie J. Colopy
JONES DAY
kjcolopy@jonesday.com

C. Christopher Groves
JONES DAY
cgroves@jonesday.com

Paul L. Hoffman
SCHONBRUN DESIMONE SEPLOW HARRIS & HOFFMAN

---

[5] Given the Court's resolution of the Motion to Compel, the Court need not decide whether Defendants could be compelled to make the seventeen headmen available for depositions under Fed. R. Civ. Pro. 30 or, if not, whether Plaintiffs should be allowed to contact them *ex parte*.

723 Ocean Front Walk
Suite 100
Venice, CA 90291

Kimberly Denise Jeselskis
MACEY SWANSON AND ALLMAN
kjeselskis@maceylaw.com

Virginia Kim
THE VALOREM GROUP, LLC
35 East Wacker Drive, Suite 2900
Chicago, IL 60601

Patrick J. Lamb
THE VALOREM LAW GROUP, LLC
patrick.lamb@valoremlaw.com

Christian Alexandra Levesque
CONRAD & SCHERER
cl@conradscherer.com

Barry A. Macey
MACEY SWANSON AND ALLMAN
bmacey@maceylaw.com

Nora L. Macey
MACEY SWANSON AND ALLMAN
nmacey@maceylaw.com

Mark J. R. Merkle
KRIEG DEVAULT LLP
mmerkle@kdlegal.com

Robert A. Mittelstaedt
JONES DAY
ramittelstaedt@jonesday.com

Marc T. Quigley
KRIEG DEVAULT LLP
mquigley@kdlegal.com

Thomas A. Rector
JONES DAY
tarector@jonesday.com

Michael L. Rice

JONES DAY
mlrice@jonesday.com

Mark D. Sayre
THE VALOREM LAW GROUP LLC
mark.sayre@valoremlaw.com

Benjamin Schonbrun
SCHONBRUN DeSIMONE SEPLOW HARRIS & HOFFMAN, LLP
schonbrun.ben@gmail.com

Natacha Thys
CONRAD & SCHERER
nt@conradscherer.com

Hugh J. Totten
THE VALOREM LAW GROUP
hugh.totten@valoremlaw.com