UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BOIMAH FLOMO, *et al.*, | ) | |
|    *Plaintiffs*, | ) | |
| | ) | |
|    *vs.* | ) | 1:06-cv-000627-WTL-JMS |
| | ) | |
| BRIDGESTONE AMERICAS HOLDING, INC., *et al.*, | ) | |
| | ) | |
|    *Defendant*. | ) | |

## ORDER

Presently before the Court is Defendants' Request for Teleconference and Expedited Motion for Paternity Test and Other Discovery Concerning Plaintiff Alleged in the Complaint to Be "Johnny Myciaga" (the Motion"). [Dkt. 289.]

### BACKGROUND

Through their Motion, Defendants seek to resolve a dispute regarding the paternity of Plaintiff Johnny Myciaga, a minor. Fayia Myciaga, the individual who instituted this action in Johnny's name (and in his own name with respect to claims that have been dismissed) contends that he is Johnny's father. [*See* dkt. ¶15] In support of that contention, he has submitted an affidavit to that effect. [Dkt. 301-2 ¶3.] Defendants, on the other hand, argue that Johnny's biological father is actually a man named Flomo Sulon, citing in support Mr. Sulon's declaration to that effect [dkt. 209-10 ¶2] as well as that of the woman whom everyone acknowledges is Johnny's mother, Nancy Fahn [dkt. 290-9 ¶1]. Defendants seek DNA testing of Mr. Myciaga and Johnny to resolve the paternity issue.

### DISCUSSION

Proper resolution of Defendants' Motion requires consideration of two different rules of civil procedure.

First, the Court must consider Rule 35, which authorizes the Court to "order a party whose mental or physical condition—including blood group—is in controversy to submit to physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. Pro. 35(a)(1). Before entering such an order, however, the Court must additionally find the existence of "good cause" for the testing, *id.* 35(a)(2)(A).

Second, the Court must consider Rule 17. Among other things, Rule 17(c) limits those who are entitled to represent minors in litigation. Under that Rule, the Court must generally give preference to the minor's "general representative" (commonly termed a "guardian") over a "special representative" (commonly termed a "next friend" or a "guardian ad litem"). *See id.* 17(c); *T.W. by Enk v. Brophy*, 124 F.3d 893, 895 (7th Cir. 1997) ("Unless…the court finds the child's general representative to be inadequate, it should not allow the general representative to be bypassed by appointing a special representative to litigate on behalf of his ward."). The identity of a minor's guardian turns on the law of forum. Fed. R. Civ. Pro. 17(b)(3). In Indiana, a minor's guardians are usually his biological parents. *See Jemerson v. Watterson (In re J.R.W.)*, 877 N.E.2d 487, 492 (Ind. Ct. App. 2007) (dismissing an action filed by a next friend where the minor's father was known and noting the general rule that "it is the duty of the parent…of an infant to institute and prosecute an action on behalf of the infant for the protection of his rights" (quotation and citation omitted)).

Turning to the present Motion, the Court finds that the identify of Johnny's father—and hence the identify of his guardian—is very much in controversy, as evidenced by the dueling affidavits of paternity. The resolution of that controversy is particularly important given Mr. Sulon's and Ms. Fahn's lack of consent to Johnny's participation in this action, [dkt. 290-9 ¶9,

290-10 ¶3],[1] an absence that may have quasi-constitutional implications if Mr. Myciaga is not actually Johnny's father. *See Brophy*, 124 F.3d at 897 (noting that Rule 17(c) furthers the policy behind the standing requirements of Article III, "which is to confine the right to initiate and control federal court litigation to persons who have a concrete stake, rather than merely an ideological interest—passionate and motivating as such interests can be—in the litigation").

The Court also finds that the probative affidavits that Defendants have submitted (particularly that of Johnny's mother, who is in the best position among the affiants to know the identity of Johnny's true father) and other circumstantial evidence that Defendants have cited, together establish the "good cause" necessary to proceed with DNA testing. And inasmuch as Defendants have proposed only minimally invasive, oral epithelial-cell DNA testing [*see* dkt. 303 at 7] at their own expense, the burden imposed on Johnny will be slight—a burden that in any event will be outweighed by the information to be discovered.[2] Further, Johnny's own claims buttress the finding of good cause. As noted by Firestone at the oral argument, the very heart of Johnny's claim is that he worked with his father at the Plantation "to meet the family quota set by the overseers at the Firestone Plantation. If [Johnny] didn't work to meet the family quota, Plaintiff [Fayiah Myciaga] would not be paid and his family would starve." [Dkt. 2 ¶15.] Thus, whether Johnny is Mr. Myciaga's son, and whether they are part of a family for whom Johnny needed to work, have both been at issue since the inception of this case.

Whether the Court can order Mr. Myciaga to submit to even minimally invasive DNA testing is, however, a more difficult question. Rule 35 represents a departure from the common

---

[1] The Court also notes that Moses Fahn, who is Ms. Fahn's husband and who claims to be both Johnny's step father and Johnny's source of financial support [dkt. 290-13 ¶¶5, 7] likewise did not consent to Johnny's participation in this action.

[2] The Court notes that Defendants volunteered at oral argument to secure Johnny's transportation to the testing location, further reducing the burden on him.

law, which denied courts the authority to order anyone, litigant or not, to submit to such testing. *See Union P. R. Co. v. Botsford*, 141 U.S. 250, 251-252 (1891) ("To compel any one…to lay bare the body, or to submit it to the touch of a stranger, without lawful authority, is an indignity, an assault and a trespass; and no order or process, commanding such an exposure or submission, was ever known to the common law in the administration of justice between individuals, except in a very small number of cases, based upon special reasons, and upon ancient practice, coming down from ruder ages, now mostly obsolete in England, and never, so far as we are aware, introduced into this country."). Given that common-law backdrop, courts have generally construed the "party" requirement in Rule 35 narrowly, usually finding that it confers no jurisdiction to compel guardians to submit to court-ordered testing. *See Caban v. 600 E. 21st St. Co.*, 200 F.R.D. 176, 180 (E.D.N.Y. 2001) (collecting cases). Because Mr. Sulon (who claims to be the biological father) is apparently cooperating with Defendants and may thus be willing to voluntarily submit to a cheek swab and, alternatively, because Mr. Myciaga's DNA may already be readily available on physical objects (e.g. his toothbrush or his comb) that Defendants may be able to obtain through the normal discovery process, judicial restraint requires the Court to decline to definitively determine whether it has jurisdiction order Mr. Myciaga to submit to testing himself. The Court will only reach that jurisdictional issue if Defendants demonstrate the necessity of the Court's doing so.

Finally, the Court notes that Defendants' Motion requests that they be permitted to serve additional interrogatories, regardless of the results of the DNA testing. By separate entry, the Court has issued a schedule by which proposed interrogatories should be submitted and any objections made. The Court will not, therefore, address that portion of Defendants' Motion now.

## CONCLUSION

The Court **GRANTS IN PART** Defendants' Motion.  Plaintiff Johnny Myciaga will be ordered to submit to oral, epithelial cell DNA testing for the sole purpose of determining the identity of his father, at Defendants' expense (including transportation costs).  Defendants shall meet and confer with Plaintiffs regarding the precise mechanics of the testing that the Court must include in its order, *see* Fed. R. Civ. Pro. 35(b)(2)(B), and submit a proposed order within **seven days**.  If no agreement is reached, Defendants shall submit a proposed order within that time, and Plaintiffs will have **five business days** to file any objection.   Defendants shall  file a report as to the testing authorized herein within 30 days.

12/02/2009

_Jane Magnus-Stinson_
Jane Magnus-Stinson
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF only:**

Nicole N. Auerbach
THE VALOREM LAW GROUP
nicole.auerbach@valoremlaw.com

Lisa R. Castle
VALOREM LAW GROUP LLC
lisa.castle@valoremlaw.com

Terrence P. Collingsworth
CONRAD & SCHERER
tc@conradscherer.com

Katie J. Colopy
JONES DAY
kjcolopy@jonesday.com

C. Christopher Groves

JONES DAY
cgroves@jonesday.com

Paul L. Hoffman
SCHONBRUN DESIMONE SEPLOW HARRIS & HOFFMAN
723 Ocean Front Walk
Suite 100
Venice, CA 90291

Kimberly Denise Jeselskis
MACEY SWANSON AND ALLMAN
kjeselskis@maceylaw.com

Patrick J. Lamb
THE VALOREM LAW GROUP, LLC
patrick.lamb@valoremlaw.com

Christian Alexandra Levesque
CONRAD & SCHERER
cl@conradscherer.com

Barry A. Macey
MACEY SWANSON AND ALLMAN
bmacey@maceylaw.com

Nora L. Macey
MACEY SWANSON AND ALLMAN
nmacey@maceylaw.com

Mark J. R. Merkle
KRIEG DEVAULT LLP
mmerkle@kdlegal.com

Robert A. Mittelstaedt
JONES DAY
ramittelstaedt@jonesday.com

Marc T. Quigley
KRIEG DEVAULT LLP
mquigley@kdlegal.com

Thomas A. Rector
JONES DAY
tarector@jonesday.com

Michael L. Rice

JONES DAY
mlrice@jonesday.com

Mark D. Sayre
THE VALOREM LAW GROUP LLC
mark.sayre@valoremlaw.com

Benjamin Schonbrun
SCHONBRUN DeSIMONE SEPLOW HARRIS & HOFFMAN, LLP
schonbrun.ben@gmail.com

Hugh J. Totten
THE VALOREM LAW GROUP
hugh.totten@valoremlaw.com