UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BOIMAH FLOMO, *et al.*, <br>    *Plaintiffs*, <br><br>    *vs.* <br><br> BRIDGESTONE AMERICAS HOLDING, INC., *et al.*, <br>    *Defendants*. | ) <br> ) <br> ) <br> )    1:06-cv-000627-WTL-JMS <br> ) <br> ) <br> ) <br> ) |

# **ORDER**

Presently before the Court is Plaintiffs' Expedited Motion for Reconsideration of the Court's December 3, 2009 Order Regarding Defendants' Expedited Motion for Paternity Test (Dkt. No. 330), and Motion to Stay the Court's Paternity Test Order (the "Motion"). [Dkt. 333.] Although it is not yet fully briefed, the Court need not await Defendants' response to deny Plaintiffs' request to reconsider an adverse ruling to them or to award the other relief below.

In their Motion, Plaintiffs lodge the very serious allegation that Defendants (with no alleged involvement of counsel) fraudulently obtained an affidavit from Flomo Sulon, in which he claimed to be Plaintiff Johnny Myciaga's father. Among other things, Plaintiffs say that Firestone employee Saliyah Blamah threatened that Mr. Sulon's son was going to be kidnapped if Mr. Sulon did not put his thumbprint on an affidavit (the contents of which were unknown to the apparently illiterate and non-English speaking Mr. Sulon) and, somewhat contradictorily, that Firestone subsequently substituted the handwritten affidavit that Mr. Sulon marked with a typed one. [*See* dkt. 333 at 3.] The Court relied, in part, upon that typed affidavit from Mr. Sulon when deciding to order Johnny to submit to DNA testing to determine whether his real guardian is—as required by Federal Rule of Civil Procedure 17(c)—representing him in this action. Plaintiffs say that accordingly this alleged misconduct justifies reconsideration of the Court's

- 1 -

DNA testing order [dkt. 330].  This alleged misconduct may also, Plaintiffs say, merit additional investigation by them and a possible motion for sanctions.  [*See* dkt. 333 at 4-5.]

The Court disagrees about the need to reconsider its decision to permit paternity testing.  Given the conflicting affidavits of Mr. Sulon that have been submitted to the Court—saying that he is or, now, is not Johnny's father—the DNA paternity testing that the Court has authorized will possess a greater air of reliability than his affidavits, and is all the more reason to proceed with the testing.  Further, even without Mr. Sulon's original affidavit, significant circumstantial evidence was presented that suggests that Fayiah Myciaga, the man purporting to be Johnny's biological father in the Complaint, isn't actually Johnny's father.  That circumstantial evidence included Mr. Myciaga's conflicting testimony about whether he was ever married to Johnny's mother, and both the possibility that Mr. Myciaga was only seven years old when he sired Johnny and that he did so in a location far from his home.  [*See* dkt 303 at 5.]  And while Mr. Myciaga worries about the "emotional turmoil" that will occur from scientific verification of the father-son relationship that he always "thought" that he had with Johnny [dkt. 333 at 8], the degree of that turmoil will directly vary according to the amount of doubt that Mr. Myciaga has about Johnny's true paternity.  If there is little doubt about paternity, there should be little turmoil.  From the Court's perspective, the greater the doubt about that paternity, the greater the need for scientific verification of the claims that Mr. Myciaga purposefully and necessarily made by authorizing Johnny's claims to be presented in this forum—one that generally requires minors to be represented by their true guardians.  [*See* dkt. 330 at 2-3.][1]

---

[1] Insofar as Mr. Sulon now appears to disclaim any intention to voluntarily submit to paternity testing through a cheek swab, the Court finds that present intention irrelevant.  As the Court has previously discussed, other means of obtaining DNA from objects or otherwise may be available.

The Court does agree, however, that the nature of the allegations presented in the Motion merit more discovery. Further, having lodged such serious allegations, the Court expects that Plaintiffs be able to prove them. Accordingly, when the parties return to Liberia for the next round of depositions, the parties should conduct depositions that relate to the circumstances under which Mr. Sulon's affidavits—both the one that Defendants have submitted and the new one that Plaintiffs have submitted—were obtained. To the extent that any depositions need to be reopened solely to explore these issues, the parties are given leave to reopen them. Inasmuch as the Court is sure that no counsel in this action would tolerate a fraud upon the Court, the Court anticipates that neither side will lodge any work-product objections over questioning about who said what to Mr. Sulon, and what he said in return.

The Motion's allegations of potential irregularities in the affidavit-execution process also implicate another, recurring, problem in this case: the inability (or near inability) of the Liberian witnesses to read, speak, and/or understand American English. For example, the Court has already had to previously require the use of interpreters during depositions [*see* dkt. 111], and Defendants have recently sought discovery into whether Plaintiffs understood the declarations that were presented to them for signature [dkt. 265]. To minimize any future problems, the counsel shall comply with the procedure set forth in the Conclusion of this Order.

Finally, the Court notes that the Motion was filed as an "expedited" one. This is hardly the first motion that one party has unilaterally deemed expedited. [*See* dkts. 134, 174, 217, 252, 289, 319.] Because expedited motions that are filed in this case take precedence over non-expedited motions filed in other cases, fairness requires that the Court ensure that motions labeled as "expedited" truly merit that label. The Court will, therefore, establish another procedure in the Conclusion of this Order to so ensure.

CONCLUSION

The Motion is **DENIED** to the extent that it seeks reconsideration of the Court's order authorizing DNA paternity testing [dkt. 330]. The Motion is also **DENIED** to the extent that it seeks a stay of that order pending further discovery as to the circumstances under which Mr. Sulon's original affidavit was obtained. The Motion is **GRANTED IN PART** to the extent that both parties may conduct discovery, including reopening any necessary depositions into the circumstances under which Mr. Sulon's original and subsequent affidavits were obtained. The parties are also, of course, free to conduct further discovery, including any necessary depositions, to fully develop—with both sides present and interpreters and a court reporter in place—the issue of the relationship between Johnny Myciaga a/k/a Joseph Fahn, and Fayiah Myciaga.

The Court now, *sua sponte*, **ORDERS** (1) that counsel electronically record (via audio or video means) those portions of client meetings devoted to signing affidavits where the affidavits are read to the clients and the client acknowledge their consent to the text of the affidavits, which recordings must be kept through the completion of this litigation for possible *in camera* review, and (2) that affidavits from Liberian non-"clients" (i.e. those outside the attorney-client privilege) be executed only upon forty-eight hours' notice to opposing counsel, who shall have the right to witness, personally or by a representative, the execution of the affidavits and to ensure that the affiant understands the content of the affidavit.

The Court also, *sua sponte*, **ORDERS** that no party in this case file an "expedited" motion unless the filing party either certifies in the motion that opposing counsel concurs about the necessity for expedited treatment or else obtains advance authorization from the Magistrate Judge's Courtroom Deputy, authorization that may be obtained through an email (copied to opposing counsel) that sets forth the parties' competing positions about the possible need for expedited treatment.

12/04/2009

*Jane Magnus-Stinson*
Jane Magnus-Stinson
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF only:**

Nicole N. Auerbach
THE VALOREM LAW GROUP
nicole.auerbach@valoremlaw.com

Lisa R. Castle
VALOREM LAW GROUP LLC
lisa.castle@valoremlaw.com

Terrence P. Collingsworth
CONRAD & SCHERER
tc@conradscherer.com

Katie J. Colopy
JONES DAY
kjcolopy@jonesday.com

C. Christopher Groves
JONES DAY
cgroves@jonesday.com

Paul L. Hoffman
SCHONBRUN DESIMONE SEPLOW HARRIS & HOFFMAN
723 Ocean Front Walk
Suite 100
Venice, CA 90291

Kimberly Denise Jeselskis
MACEY SWANSON AND ALLMAN
kjeselskis@maceylaw.com

Patrick J. Lamb
THE VALOREM LAW GROUP, LLC
patrick.lamb@valoremlaw.com

Christian Alexandra Levesque
CONRAD & SCHERER

cl@conradscherer.com

Barry A. Macey
MACEY SWANSON AND ALLMAN
bmacey@maceylaw.com

Nora L. Macey
MACEY SWANSON AND ALLMAN
nmacey@maceylaw.com

Mark J. R. Merkle
KRIEG DEVAULT LLP
mmerkle@kdlegal.com

Robert A. Mittelstaedt
JONES DAY
ramittelstaedt@jonesday.com

Marc T. Quigley
KRIEG DEVAULT LLP
mquigley@kdlegal.com

Thomas A. Rector
JONES DAY
tarector@jonesday.com

Michael L. Rice
JONES DAY
mlrice@jonesday.com

Mark D. Sayre
THE VALOREM LAW GROUP LLC
mark.sayre@valoremlaw.com

Benjamin Schonbrun
SCHONBRUN DeSIMONE SEPLOW HARRIS & HOFFMAN, LLP
schonbrun.ben@gmail.com

Hugh J. Totten
THE VALOREM LAW GROUP
hugh.totten@valoremlaw.com