# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| BIOMAH FLOMO, et al., | ) |
| Plaintiffs, | ) |
| vs. | ) Cause No: 1:06-cv-627-WTL-JMS |
| BRIDGESTONE AMERICAS HOLDING, INC., et al., | ) |
| Defendants. | ) |

## ENTRY ON MOTION FOR PROTECTIVE ORDER AND, OR IN THE ALTERNATIVE, MOTION FOR PRELIMINARY INJUNCTION

This cause is before the Court on the Plaintiffs' motion entitled Motion for Protective Order and, or in the Alternative, Motion for Preliminary Injunction [dkt. #246]. The motion is fully briefed and the Court, being duly advised, resolves the motion as set forth below.

This case, which was recently transferred to the docket of the undersigned judge from that of Judge David F. Hamilton, originally was filed by a group of adults and children who work on the world's largest rubber Plantation, located near Harbel, Liberia ("the Plantation"), harvesting latex for various Bridgestone Firestone entities. The allegations made in the complaint are set forth at some length in Judge Hamilton's June 26, 2007, ruling on the Defendants' motion to dismiss [dkt. #40] and need not be repeated here. Suffice it to say that the Plaintiffs alleged in the complaint that they are compelled to work under conditions that amount to forced labor. In addition, the complaint alleged that it is physically impossible for an adult worker to satisfy the daily work quota on his or her own, and therefore it is necessary for the adults to have their children help them. The Plaintiffs allege that the practice of using child labor on the Plantation is known to–and encouraged by–the Defendants and involves children as

young as six years old performing dangerous work involving heavy lifting and the use of dangerous chemicals.

Judge Hamilton granted the Defendants' motion to dismiss as to all of the adult Plaintiffs' claims. In so ruling, he determined that the adult Plaintiffs had not stated a claim for forced labor because while "[t]he remedy for truly forced labor should be termination of the employment and the freedom to go elsewhere," the "adult plaintiffs allege in their complaint that they are afraid of losing the very jobs they say they are forced to perform." Entry on Defendants' Motion to Dismiss at 56. Although clearly an admirable ideal, Judge Hamilton determined that the remedy sought by the Plaintiffs–the institution of better wages and working conditions on the Plantation–is simply beyond the power of a United States court to provide.

In addition to dismissing the adult Plaintiffs' claims, Judge Hamilton also dismissed all of the child Plaintiffs' claims except for their claim pursuant to the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS"). Judge Hamilton determined that "[t]he allegations that defendants are encouraging and even requiring parents to require their children as young as six, seven, or ten years old to do this heavy and hazardous work may state a claim for relief under the ATS" because "[a]t least some of the practices alleged with regard to the labor of very young children at the Firestone Plantation in Liberia may violate specific, universal, and obligatory standards of international law" in that they fall under the guise of the "worst forms of child labor." Entry on Defendants' Motion to Dismiss at 68-69. This fairly narrow claim is all that remains before the Court at this time.[1]

---

[1]The Court recognizes that a motion to amend the complaint is pending; the proposed amendment would not alter the resolution of the instant motion.

At issue in the instant motion is whether the Plaintiffs should be relieved of their obligation to answer and/or supplement their responses to certain interrogatories that seek information regarding current child labor taking place on the Plantation. Specifically, the Defendants argue they are entitled to know whether the Plaintiffs themselves continue to work on the Plantation and whether the Plaintiffs know of any other children who are doing so. The Plaintiffs assert, and the Defendants do not deny, that the Defendants likely will terminate the employment of any adult identified in the interrogatory responses as using a child to help him or her with work on the Plantation, because that adult would be violating the Defendants' "zero tolerance" policy toward child labor. The Plaintiffs characterize this as a threat by the Defendants to retaliate against them and their guardians for pursuing this lawsuit by selectively enforcing the zero tolerance policy against them; this, the Plaintiffs argue, will have the added benefit to the Defendants of intimidating witnesses and other potential plaintiffs. In light of the lack of any other employment options in Liberia, coupled with the fact that the Plaintiffs live in employee housing provided by the Defendants, the Plaintiffs allege that the loss of their guardians' jobs on the Plantation would almost certainly lead to homelessness and destitution for the Plaintiffs and their families. Therefore, the Plaintiffs argue that:

> In short, this Court should order that: (1) Plaintiffs may temporarily defer serving their interrogatory responses on Firestone until the depositions of relevant headmen go forward and the extent of selective enforcement of Firestone's policies prohibiting child labor and retaliatory intent is determined; and/or (2) temporarily enjoins Firestone from using Plaintiffs' responses to interrogatories as grounds for terminating or imposing adverse employment consequences on Plaintiffs' guardians until the conclusion of this case on the merits.

Plaintiffs' Brief at 11.

This Plaintiffs' request to defer serving their interrogatory responses pending additional

discovery already has been addressed by Magistrate Judge Jane Magnus-Stinson, who held in a June 16, 2009, order that the information at issue was relevant and discoverable under the applicable Federal Rules of Civil Procedure and therefore granted the Defendants' motion to compel with regard to the interrogatories. However, Magistrate Judge Magnus-Stinson expressly declined to consider the Plaintiffs' arguments relating to the All Writs Act, determining that those arguments should be briefed as a separate motion. That is the motion now before the Court.

The Court will assume that it has the power to grant the relief the Plaintiffs seek pursuant to the All Writs Act if it determines that it is appropriate to do so. The Plaintiffs' motion is based upon their assertion that the Defendants have no real interest in stopping the use of child labor on the Plantation, but rather have selectively enforced their policy against it solely as a litigation tool and will continue to do so. The Court also will accept this allegation as true for the purposes of this ruling.

The problem with the Plaintiffs' argument is two-fold. First, it is based on the mistaken premise that this lawsuit is about stopping child labor on the Plantation. As admirable of a goal as that may be, it will not be achieved by this litigation. Rather, as Judge Hamilton's order on the motion to dismiss made clear, this Court's authority is limited to, at most, addressing and redressing the "worst forms of child labor" if it is occurring or has occurred on the Plantation. Not all labor performed on the Plantation by persons under the age of 18 will fall under this category, and in any event it does not appear to the Court that it has the power to give the Plaintiffs the remedy they really want: a reduction of quotas to eliminate the alleged need for parents to enlist their children to help them.

The other, more troubling, problem with the Plaintiffs' argument is that it ignores the fact that regardless of the Defendants' motives, enforcing the policy as to the Plaintiffs, even if that enforcement is selective, will achieve what is ostensibly the core goal of this litigation–protecting the Plaintiffs from the dangers of the worst forms of child labor (if they are, in fact, engaged in such work). The Court recognizes that (again, accepting the Plaintiffs' allegations as true) it will also likely subject the Plaintiffs to dangers of another sort–the very real peril of being homeless and destitute in Liberia. Perhaps performing child labor is the lesser of two evils, perhaps it is not; that is a decision for the individual Plaintiffs to make. The fact is that what the Plaintiffs effectively are asking this Court to do is to enter an order that will allow what they allege to be among the "worst forms of child labor" to continue. This the Court will not do, and therefore the Court declines to enter an order pursuant to the All Writs Act or a preliminary injunction.

That said, however, the Court also recognizes that even if the Plaintiffs continue to work on the Plantation at this time, it is far from clear how much, if any, of their current work qualifies as the "worst form of child labor," inasmuch as the parameters of that work have not yet been established in this case. *See* Entry on Defendants' Motion to Dismiss at 65 ("It is not always easy to state just which practices under the label 'child labor' are the subjects of an international consensus."). The interrogatories are not limited to the "worst forms of child labor"–understandably so, given the fact that the term has not yet been defined. That means that there is a very real possibility that the Plaintiffs' responses to the interrogatories will implicate themselves or others as working in violation of the Defendants' zero tolerance policy–therefore subjecting their guardians to termination–but will not provide any information that ultimately is

relevant to the claims and defenses in this case. In other words, the risk of harm to the Plaintiffs if they provide the information at issue appears to be more certain than the risk that any given Plaintiff currently is performing child labor that is actionable under the Alien Tort Statute, which is the only child labor that may fall under the purview of this Court.

There is one more important consideration that was not present when the Magistrate Judge made her ruling. Currently pending before the Court is a fully-briefed motion for summary judgment. The motion has not been ripe for very long and was not anywhere near so when the Magistrate Judge issued her order granting the motion to compel. Given its complexity and the press of other business, the Court is not able to address the motion for summary judgment at this time. However, when it is addressed it potentially will resolve this case, or at least more clearly define any remaining claims. In light of that fact, and the real possibility of dire consequences to the Plaintiffs if they are required to serve the interrogatory responses at issue–dire consequences that will be for naught if the case is resolved on summary judgment–the Court determines that the interests of justice are best served by deferring the Plaintiffs' response until after the Court issues its ruling on the motion for summary judgment.

Accordingly, the Plaintiffs' obligation to respond to and/or supplement their responses to the interrogatories in question is deferred until **30 days after the Court issues its ruling on the pending motion for summary judgment**, assuming that ruling does not resolve this case. The responses served by the Plaintiffs at that time shall address the time period up to the date of the summary judgment ruling.

SO ORDERED: 12/17/2009

_____
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification