UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BOIMAH FLOMO, *et al.*, <br>    *Plaintiffs*, <br> <br>    *vs.* <br> <br> BRIDGESTONE AMERICAS HOLDING, INC., *et al.*, <br>    *Defendants*. | ) <br> ) <br> ) <br> )    1:06-cv-00627-WTL-JMS <br> ) <br> ) <br> ) <br> ) |

# ORDER

Presently before the Court are three motions. First, Defendants have filed their Request for Teleconference and Expedited Motion for Paternity Test and Other Discovery Concerning Plaintiff Alleged in the Complaint to Be "Johnny Myciaga." [Dkt. 289.] Because the Court has previously ruled on all the issues addressed in that motion except for Defendants' request for leave to serve additional interrogatories, the Court will refer to that motion as the "Motion for Leave Regarding Johnny Myciaga." Second, Plaintiffs have filed their Motion for Protective Order Seeking Relief from Answering Discovery Concerning Johnny Myciaga (the "Motion for Protective Order"). [Dkt. 302.] Third and finally, Defendants have filed their Motion for Leave to Serve Interrogatories Concerning Payments to Plaintiffs by Their Liberian Counsel (the "Motion for Leave Regarding Payments"). [Dkt. 315.]

**A. The Motion for Leave Regarding Johnny Myciaga**

Previously, the Court ruled that Plaintiff Johnny Myciaga had to provide oral epithelial cells for DNA paternity testing. [Dkt. 330.] The Court did so after receiving evidence that suggests that Fayiah Myciaga, the man who claims to be Johnny's father in this action, is not actually his father or guardian—and thus cannot represent Johnny in this action. [*Id.*]

Through their Motion for Leave Regarding Johnny Myciaga, Defendants seek leave to serve Johnny seventeen additional interrogatories to explore Mr. Myciaga's paternity claims. Defendants need to obtain such leave of Court because they have already exceeded the twenty-five interrogatories authorized under Federal Rule of Civil Procedure 33(a)(1).

As the Court has previously explained, "the twenty-five interrogatory limit contained in Federal Rule of Civil Procedure is not meant to prevent needed discovery but to provide some judicial scrutiny before parties make potentially excessive use of this discovery device." [Dkt. 350 at 2 (quotation omitted).] Defendants have, therefore, submitted their proposed interrogatories for the Court's scrutiny. [Dkt. 335-4.]

To the extent that Plaintiffs lodge relevance objections over Johnny's paternity, the Court rejects those claims for the reasons previously expressed, [dkt. 330], particularly given the wide notion of relevance for discovery purposes, *see* Fed. R. Civ. Pro. 26(b)(1).[1] Further, apart from the paternity issue, the apparent conflicts that have arisen in the deposition testimony, declarations, interrogatory responses, and documentary evidence raise credibility questions (though ones that Plaintiffs profess to have answers for) about Johnny and/or Mr. Myciaga. Such questions are certainly appropriate to explore in discovery, *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998) ("Rule 26… permits the discovery of information which may simply relate to the credibility of a witness or other evidence in the case." (emphasis and citations omitted)), and because some those credibility questions have arisen due to

---

[1] The Court notes that Plaintiffs have previously indicated that Mr. Myciaga won't voluntarily provide a sample of his own DNA for comparison to that of Johnny, [*see* dkt. 301 at 2-4], and the Court may lack jurisdiction to compel Mr. Myciaga to provide a DNA sample [dkt. 330 at 4]. Thus, Plaintiffs' complaint that Defendants seek to serve interrogatories regardless of the paternity testing's results lies at the feet of Mr. Myciaga. [Dkt. 301 at 9.]

-2-

declarations that were submitted since Johnny and Mr. Myciaga were deposed, Defendants couldn't have explored those questions during their depositions.

Plaintiffs additionally claim that answering the interrogatories will impose an undue burden; they claim answering the interrogatories will require Johnny to travel multiple times from his home to his counsel's office, a journey of over an hour each way. [Dkt. 301 at 15.] That claim overlooks the fact that counsel could travel to meet Johnny instead. Indeed, Mr. Brownell, Plaintiffs' Liberian counsel, has previously filed an affidavit indicating that he often does just that. [Dkt. 195-4 ¶9. ("In the course of my work on the Firestone Child Labor Litigation, I frequently visit the Firestone Plantation to meet with our clients, their family members, and also to look for other witnesses or evidence in the case.").] Further, the claim of undue burden is also difficult to believe given the relatively straightforward information that Defendants' interrogatories seek. [*See e.g.*, dkt. 335-4 Interrogatories 14, 16-17 (asking Johnny to explain to the factual basis for his previous claims at various times in this litigation to have been born in 1991, 1992, and 1994).] Because Plaintiffs haven't supported their current undue burden claim with any evidence, *United States v. Stevens*, 500 F.3d 625, 629 (7th Cir. 2007) (explaining that "arguments in a [party's] brief, unsupported by documentary evidence, are **not** evidence" (citation omitted and footnote omitted; original emphasis)), the Court won't credit them.[2]

Finally, Plaintiffs make various objections to the substance of the interrogatories, none of which the Court finds persuasive. For example, Plaintiffs raise work-product objections to interrogatories that seek the "basis for" allegations in the Complaint rather than, as Plaintiffs

---

[2] If evidence not available to this Court demonstrates that the interrogatories truly pose an undue burden, the Court is confident that Defendants would agree to reopen Johnny's deposition instead, consistent with the discovery cooperation expectations set forth in the Standards for Professional Conduct Within the Seventh Federal Judicial Circuit.

suggest Defendants should have said, "facts that support" those allegations, [dkt. 343 at 17], an objection of mere semantics that does not implicate the work-product immunity. Likewise, they claim that various interrogatories are vague and overly broad [*id.* at 16], even though the interrogatories reasonably set forth the information requested and seek information that is tailored to the issue of paternity (and its implications vis-à-vis credibility). And to the extent that Johnny claims that he can't reasonably be expected to answer certain interrogatories without documents or other information beyond his control [*see id.* at 17], a truthful answer would be "I don't know."[3] Thus, the Court finds the proposed interrogatories acceptable.

The Court will therefore **GRANT** the Motion for Leave Regarding Johnny Myciaga and permit Defendants to serve their proposed interrogatories.

### B. The Motion for Protective Order

Plaintiffs' Motion for Protective Order seeks to prevent Defendants from serving any additional interrogatories about Johnny's paternity. In light of the Court's ruling above, the Motion for Protective Order is **DENIED**.

### C. The Motion for Leave Regarding Payments

Through their Motion for Leave Regarding Payments, Defendants seek leave to serve three additional interrogatories on each Plaintiff to explore deposition testimony claims that two Plaintiffs' guardians have received money from Mr. Brownell (and his associates) for participating in the lawsuit. [*See* dkt. 316-1 at 4 (testifying that one Plaintiff's guardian had boasted about receiving money from Mr. Brownell); 316-2 (testifying that Mr. Myciaga said that he was receiving money for participating in this lawsuit and that his wife had boasted that the

---

[3] Of course, he can't say "I don't know" to an interrogatory if his counsel knows the answer to it. *See Hickman v. Taylor*, 329 U.S. 495, 505 (1947) (explaining that parties must include information known to counsel in their answers to interrogatories).

amount was $120 (equal to approximately 40 days' wages [dkt. 2 ¶49])).] Those interrogatories ask Plaintiffs to disclose whether they and/or their guardians have received such money or other items of value, and if so, to itemize and such payments and to identify documents that relate to those payments. [*See* dkt. 316-3.]

Plaintiffs object that the requested discovery isn't relevant, but the Court disagrees. If Plaintiffs (or their guardians) are being paid in this lawsuit, those payments might diminish the credibility of Plaintiffs' testimony at trial, in much the same way that litigants often try to impeach expert witnesses for being paid "for their testimony" rather than "for their time." As indicated above, discovery into the credibility of witnesses is proper.[4]

Plaintiffs also object that it would be unduly burdensome to make each Plaintiff answer the interrogatories. Here, the Court agrees. At oral argument, Defense counsel argued, "It would be very simple for Mr. Brownell, who has already submitted declarations to this Court, to submit another one saying I haven't given plaintiffs any money except to reimburse for taxi cabs, and here's who I've given and how much," and thereby avoid the need entirely for the interrogatories. [Dkt. 344 at 42.] Since oral argument, Mr. Brownell's deposition in this matter has become necessary. [*See* dkt. 334 at 3.] During that deposition, Defendants will have the opportunity to inquire about the extent (if any) of payments that he and his associates have made to Plaintiffs, effectively obtaining the affidavit that they wanted. Thus, Defendants don't need to use interrogatories to indirectly learn about any payments from Mr. Brownell; they can ask him directly. And he must answer.

---

[4] Further, payment from counsel would also constitute professional misconduct, unless the payment merely reflected reimbursement of litigation costs and expenses, Ind. R. Prof. Resp. 1.8(e).

Because Mr. Brownell represents a "source [of information] that is more convenient, less burdensome, [and] less expensive," than interrogatories to Plaintiffs, the Court **DENIES** the Motion for Leave Regarding Payments. Fed. R. Civ. Pro. 26(b)(2)(C)(i).

**Conclusion**

The Court **GRANTS** Defendants' Motion for Leave Regarding Johnny Myciaga. Plaintiff Johnny Myciaga shall answer the interrogatories [dkt. 335-4] within fifteen days, or within such longer period as the parties may stipulate in writing.

The Court **DENIES** Plaintiffs' Motion for Protective Order and **DENIES** Defendants' Motion for Leave Regarding Payments.

12/22/2009

*Jane Magnus-Stinson*
Jane Magnus-Stinson
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF only:**

Nicole N. Auerbach
THE VALOREM LAW GROUP
nicole.auerbach@valoremlaw.com

Lisa R. Castle
VALOREM LAW GROUP LLC
lisa.castle@valoremlaw.com

Terrence P. Collingsworth
CONRAD & SCHERER
tc@conradscherer.com

Katie J. Colopy
JONES DAY
kjcolopy@jonesday.com

C. Christopher Groves
JONES DAY
cgroves@jonesday.com

Paul L. Hoffman
SCHONBRUN DESIMONE SEPLOW HARRIS & HOFFMAN
723 Ocean Front Walk
Suite 100
Venice, CA 90291

Kimberly Denise Jeselskis
MACEY SWANSON AND ALLMAN
kjeselskis@maceylaw.com

Patrick J. Lamb
THE VALOREM LAW GROUP, LLC
patrick.lamb@valoremlaw.com

Christian Alexandra Levesque
CONRAD & SCHERER
cl@conradscherer.com

Barry A. Macey
MACEY SWANSON AND ALLMAN
bmacey@maceylaw.com

Nora L. Macey
MACEY SWANSON AND ALLMAN
nmacey@maceylaw.com

Mark J. R. Merkle
KRIEG DEVAULT LLP
mmerkle@kdlegal.com

Robert A. Mittelstaedt
JONES DAY
ramittelstaedt@jonesday.com

Marc T. Quigley
KRIEG DEVAULT LLP
mquigley@kdlegal.com

Thomas A. Rector
JONES DAY
tarector@jonesday.com

Michael L. Rice
JONES DAY
mlrice@jonesday.com

Mark D. Sayre
THE VALOREM LAW GROUP LLC
mark.sayre@valoremlaw.com

Benjamin Schonbrun
SCHONBRUN DeSIMONE SEPLOW HARRIS & HOFFMAN, LLP
schonbrun.ben@gmail.com

Hugh J. Totten
THE VALOREM LAW GROUP
hugh.totten@valoremlaw.com