UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BOIMAH FLOMO, *et al.*, | ) | |
|     *Plaintiffs*, | ) | |
| | ) | |
|     *vs.* | ) | 1:06-cv-00627-JMS-TAB |
| | ) | |
| BRIDGESTONE AMERICAS HOLDING, INC., *et* | ) | |
| *al.*, | ) | |
|     *Defendants*. | ) | |

## ORDER

Presently before the Court is Defendants' Motion to Modify and Reconsider this Court's

December 17, 2009 Order Re: Service of Interrogatory Responses (the "<u>Motion to Reconsider</u>").

[Dkt. 501.]

### BACKGROUND

As this Court has had the opportunity to explain on multiple occasions in the long history

of this case, the only claim at issue here is whether, in violation of the Alien Tort Statute, 28

U.S.C. § 1350, minor Plaintiffs were subjected to universally condemned "worst forms" of child

labor on a rubber plantation in Liberia, which are proscribed by ILO Convention 182, the 1999

Convention Concerning the Prohibition and Immediate Elimination of the Worst Forms of Child

Labor. [Dkt. 40 at 66.] Plaintiffs' Complaint and their proposed Amended Complaint (a plead-

ing that tried to include claims arising under Liberian law, which was eventually rejected, [dkt.

548]) maintained that Plaintiffs had been and still were performing the allegedly illegal work

with the full knowledge of Defendants—even after Defendants had instituted a "zero tolerance"

prohibition against all child labor. [*See* dkt. 237.]

Given the obvious importance of the topic to liability, to damages, and to the scope of

any injunctive relief, Defendants propounded interrogatories to Plaintiffs in 2008 that, among

other things, asked Plaintiffs to state (1) when they claimed to have worked, (2) what work they claimed to have performed, and (3) which of Defendants' employees knew about that work. [*See, e.g.*, dkt. 219-2 at 3-4.] Plaintiffs also testified about their work a few months later during their depositions. [*See, e.g.*, 227-4 at 2.]

In the face of Plaintiffs' repeated assertions of ongoing child labor on the Plantation and that Defendants' anti-child-labor policy was a mere "paper tiger," [*e.g.* dkt. 229 at 33-39], Defendants served Plaintiffs with a new round of interrogatories in 2009. The additional interrogatories sought to update information about child labor on the Plantation, including that which Plaintiffs claimed to be performing. But Plaintiffs refused to answer or supplement their earlier interrogatories. They feared that Defendants would enforce the zero-tolerance policy against Plaintiffs' guardians, even though Plaintiffs also simultaneously seek to hold Defendants' liable for failing to enforce the policy. The undersigned, while serving as the Magistrate Judge, granted Defendants' motion to compel concerning those interrogatories insofar as is relevant here, finding that the Federal Rules of Civil Procedure required Plaintiffs to provide the information—notwithstanding any potentially ill consequences that may befall their guardians—because Plaintiffs' past and present work history would "go[] to the heart of their case" at trial. [Dkt. 237 at 8.]

Plaintiffs filed their interrogatory responses under seal. [Dkt. 247-48.] But pursuant to the All-Writs Act, 28 U.S.C. § 1651, and/or the Court's ability to issue preliminary injunctions, Plaintiffs then requested that that the Court:

> order that: (1) Plaintiffs may temporarily defer serving their interrogatory responses on Firestone until the depositions of relevant headmen go forward and the extent of selective enforcement of Firestone's policies prohibiting child labor and retaliatory intent is determined; and/or (2) temporarily enjoin Firestone from using Plaintiffs' responses to interrogatories as grounds for terminating or imposing

adverse employment consequences on Plaintiffs' guardians until the conclusion of this case on the merits.

[Dkt. 246 at 11.]

On December 17, 2009, the Court denied both alternatives through an order written by District Judge Lawrence, who was presiding over the case at the time. The Court found the first alternative impermissibly inconsistent with the ruling on the motion to compel (which had not been appealed under Federal Rule of Civil Procedure 72(a)). [Dkt. 352 at 4.] The Court rejected the second alternative because issuing the requested injunction would "allow what [Plaintiffs] allege to be among the 'worst forms of child labor' to continue." [*Id.* at 5.]

After weighing the competing interests, the Court's December 17 order did, however, find that Plaintiffs should be permitted to defer serving their interrogatory answers until thirty days after the Court ruled on the then-recently ripe motion for summary judgment. [*Id.* at 6.] The Court explained that because the summary judgment ruling would define "worst forms" of child labor in the context of this case, deferring Plaintiffs' obligation to answer would enable Defendants to redraft their interrogatories so as to only focus on that type of labor. That way, Plaintiffs wouldn't have to disclose any information that isn't "ultimately…relevant to the claims and defenses in this case" but that may nonetheless subject their guardians to discipline. [*Id.* at 5.] Likewise, because the summary judgment ruling might hold that Plaintiffs have no evidence of any "worst forms" of child labor at all, any disclosure in the meanwhile might be for "naught" and should be avoided. [*Id.*]

Defendants' Motion to Reconsider asks that the Court order Plaintiffs to update and serve their interrogatory answers immediately. To date, court congestion has precluded a ruling on the highly complex motion for summary judgment. (The relevant docket entries fill five, 5" binders—as the undersigned discovered upon recent reassignment to preside over this case.)

**DISCUSSION**

Judicial economy dictates that courts must discourage motions to reconsider; parties must normally make their best arguments on the first go around. *See, e.g*, *Brownstone Publ'g, LLC v. AT&T, Inc.*, 2009 U.S. Dist. LEXIS 25485, *7 (S.D. Ind. 2009) ("Motion practice is not an exercise in trial and error…." (quotation omitted)). But while discouraged, they aren't forbidden. Indeed, motions to reconsider can be entirely appropriate when intervening changes to the law or the facts make a previous interlocutory decision unjust. *See, e.g. Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987).

Here, several important changes to the facts have occurred since the Court's December 17 order that make reconsideration appropriate.

First, Plaintiffs publicly filed and relied upon Plaintiff Johnny Myciaga's interrogatory responses in April to oppose Defendants' motion to dismiss him from this case. [Dkt. 488-13.] Inasmuch as all Plaintiffs consented to his filing of the responses—each Plaintiff joined in Johnny's response brief, [*see* dkt. 487]—they disclosed that information which they claim shouldn't have to be disclosed. It is no response to claim, as Plaintiffs do, that the disclosure wasn't "selective" simply because the evidence was useful in litigating a particular motion. [*See* dkt. 517 at 2-3.] Indeed, disclosing information only when the information is helpful is exactly the type of "sword-and-shield" litigation tactic that the Court has previously declared improper. [Dkt. 237 at 7.]

Second, a case management deadline has now become impending that was ten months away when Judge Lawrence ruled originally: the deadline for the parties to travel to Liberia to conduct trial preservation depositions of Defendants' employees. [Dkt. 355, 555.] With respect to Johnny, his interrogatory answers revealed four employees not already on Defendants' trial witness list whom Plaintiffs contend knew of his work, witnesses whose testimony the jury

might reasonably expect to hear if they deny his claims. The Federal Rules provide for discovery so as to avoid surprise at trial. *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958). Given the distance involved, and the need to obtain visas, Defendants will likely be unable on-the-fly to produce witnesses necessary to counter Plaintiffs' trial testimony about which employees allegedly know about Plaintiffs' continued work. As such, the trial preservation depositions are critically important, and Defendants shouldn't be hamstrung when selecting witnesses to testify or in examining those witnesses—but both would be necessary consequences of permitting Plaintiffs to continue to keep "secret" their evidence about the extent of their ongoing work. Because that deadline wasn't impending at the time that Judge Lawrence ruled originally, the Court rejects Plaintiffs' suggestion that Judge Lawrence already considered the prejudice to Defendants when ruling in the first instance, [*see* dkt. 517 at 3].

Finally, Plaintiffs had until only recently been seeking not only damages, but also injunctive relief. They relied on that prior injunctive claim in opposing Defendants' original motion to compel the answers at issue. [Dkt. 232 at 9.] But Plaintiffs have now abandoned their claims for injunctive relief, necessarily including any claim as to the manner in which the Court might require Defendants to enforce an anti-child labor policy. [Dkt. 566.][1] Plaintiffs are now solely requesting damages, and the focus of the case is now the extent to which they claim to have been forced to work and which of Defendants' agents allegedly were complicit in their continued labor. These are the very topics on which the Defendants seek discovery.

Taken together, these changed circumstances indicate that continuing to defer Plaintiffs' compliance with their discovery obligations will unfairly prejudice Defendants. Further, the Court is concerned that continuing to allow Plaintiffs to avoid complying with their discovery

---

[1] Nothing in this Order should be read to imply that terminating Plaintiffs' guardians will or will not give rise to a claim for damages in an appropriate forum.

obligations perpetuates the very practices Plaintiffs contend to be illegal and universally con-demned "worst forms" of child labor.

Accordingly, the Motion to Reconsider [dkt. 501] is **GRANTED**. Plaintiffs shall have **twenty-one days**, or such longer period as the parties may stipulate in writing, to serve Defen-dants with the interrogatory responses previously filed under seal [dkt. 247-48] and with supple-mental responses that are current as of today's date. Defendants may choose whether they wish to receive the responses in two parts, or one comprehensive response, and shall notify Plaintiffs of their preference within seven days.

07/19/2010

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Terrence P. Collingsworth
CONRAD & SCHERER
tc@conradscherer.com

Katie J. Colopy
JONES DAY
kjcolopy@jonesday.com

Rafael S. Garcia
CONRAD & SCHERER, LLP
rgarcia@conradscherer.com

C. Christopher Groves
JONES DAY
cgroves@jonesday.com

Piper M. Hendricks
CONRAD & SCHERER LLP
phendricks@conradscherer.com

Paul L. Hoffman
SCHONBRUN DESIMONE SEPLOW HARRIS & HOFFMAN
723 Ocean Front Walk
Suite 100
Venice, CA 90291

Kimberly D. Jeselskis
JESELSKIS LAW OFFICES, LLC
kjeselskis@kdjlegal.com

Christian Alexandra Levesque
CONRAD & SCHERER
cl@conradscherer.com

Mark J. R. Merkle
KRIEG DEVAULT LLP
mmerkle@kdlegal.com

Robert A. Mittelstaedt
JONES DAY
ramittelstaedt@jonesday.com

Marc T. Quigley
KRIEG DEVAULT LLP
mquigley@kdlegal.com

Thomas A. Rector
JONES DAY
tarector@jonesday.com

Michael L. Rice
JONES DAY
mlrice@jonesday.com

Benjamin  Schonbrun
SCHONBRUN DeSIMONE SEPLOW HARRIS & HOFFMAN, LLP
schonbrun.ben@gmail.com

Kasper  Sorensen
CONRAD & SCHERER, LLP
ksorensen@conradscherer.com

David L. Wallach
JONES DAY
dwallach@jonesday.com