UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BOIMAH FLOMO, *et al.*, | ) | |
|    *Plaintiffs*, | ) | |
| | ) | |
|    *vs.* | ) | 1:06-cv-00627-JMS-TAB |
| | ) | |
| FIRESTONE NATURAL RUBBER COMPANY, | ) | |
|    *Defendant*. | ) | |
| | ) | |

# ORDER

Presently before the Court is Defendant Firestone Natural Rubber Company's ("FNRC") Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment. [Dkt. 208]. As filed, it sought judgment under either Federal Rule of Civil Procedure 12(c) or Rule 56. But because the motion relied upon materials outside the pleadings—an impermissible circumstance for any judgment entered under Rule 12(c)—the Court previously announced that it would treat the motion exclusively as one requesting summary judgment under Rule 56. [Dkt. 234 at 2 (converting request for judgment on the pleadings to request for summary judgment, as permitted under Fed. R. Civ. Pro. 12(d))].

## BACKGROUND

Following the Court's ruling on Firestone's motion to dismiss, [dkt. 40], only one potential cause of action remains in this action: a cause of action authorized by the Alien Tort Statute (the "ATS"), 28 U.S.C. § 1350. That statute provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. The Court held that Plaintiffs—a group of Liberian children—could state a cause of action under international law by alleging (1) that an FNRC subsidiary named Firestone Liberia, Inc. ("Firestone Liberia"), formerly called

Firestone Plantations Company, was "encourag[ing] and even requir[ing] [Plaintiffs' guardians] to put their children to work" on the Liberian rubber plantation where the guardians were employees and (2) that the work that the Plaintiffs were being forced to do was so hazardous, oppressive, and injurious to their moral development as to constitute a prohibited "worst form" of child labor under ILO Convention 182, an international convention ratified by both the United States and Liberia (among many other countries). [*Id.* at 63, 67-69].

Because Plaintiffs couldn't obtain service on Firestone Liberia, it was dismissed. [Dkt. 69]. Plaintiffs' worst-form-of-child labor claim proceeds against FNRC because Plaintiffs contend that FNRC was responsible for the actions and inactions of its subsidiary, Firestone Liberia. [*See* dkt. 2 ¶¶73-75].

Through the present motion, FNRC has moved for summary judgment on several grounds. One of those grounds is that "international law does not impose liability on corporations" and, thus, Plaintiffs have no cognizable cause of action against FNRC. [Dkt. 209 at 31].

On September 17, 2010, while FNRC's motion for summary judgment remained under advisement, the Second Circuit handed down its opinion in *Kiobel v. Royal Dutch Petroleum Co.*, 2010 U.S. App. LEXIS 19382 (2d Cir. 2010). There, in one of the few appellate decisions to interpret the ATS, the majority held that the ATS does not authorize subject-matter jurisdiction for a federal court to hear claims brought against corporations—only against individuals. *Id.* at *105.

Because the Seventh Circuit hasn't addressed the issue of corporate liability in claims brought under the ATS, the Court ordered supplemental briefing on this new, out-of-Circuit, appellate authority. The parties submitted their briefs on September 24. [Dkt. 597-98].

**DISCUSSION**

Because *Kiobel* frames the issue of potential corporate liability under the ATS as a jurisdictional one, the Court must first consider whether it has jurisdiction to decide whether Plaintiffs can state a claim against FNRC. After concluding that the Court does, in fact, possess jurisdiction, the Court will decide whether an ATS claim against a corporation fails to state a valid cause of action, thereby entitling FNRC to summary judgment on the merits.

**A. Does the Court Have Jurisdiction to Hear an ATS Claim Filed Against FNRC?**

The issue of subject-matter jurisdiction "refers to a tribunal's power to hear a case. It presents an issue quite separate from the question whether the allegations the plaintiff makes entitle him to relief." *Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869, 2877 (2010) (quotation omitted). A court with subject-matter jurisdiction can tell the plaintiff that the plaintiff wins or loses under the law. A court without subject-matter jurisdiction may tell the plaintiff only that "you have selected the wrong forum for your dispute" and generally may not opine about the merits. *See, e.g.*, *T.W. v. Brophy*, 124 F.3d 893, 898 (7th Cir. 1997) (explaining that a dismissal for lack of jurisdiction is not a determination on the merits, thus permitting the plaintiff to re-file the same suit in any other forum where jurisdiction may be had).

There is, however, one small exception to the rule that the jurisdictional inquiry completely differs from a merits inquiry. If a claim theoretically within a court's jurisdiction is "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise completely devoid of merit as not to involve a…controversy," *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974) (collecting cases)—in other words, if it is "wholly insubstantial and frivolous," *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)—a federal court will lack subject-matter jurisdiction over the claim.

As mentioned above, *Kiobel* held that the ATS doesn't confer jurisdiction upon the federal courts to hear claims filed under the ATS against corporations because, in its view, international law has never embraced the concept of corporate liability. The majority's opinion, however, resulted in a very spirited eighty-seven page concurrence from Judge Leval rejecting that holding as a misinterpretation of international law. Further, the majority's rule conflicts with the law in the Eleventh Circuit that courts not only have jurisdiction to decide whether corporations may be civilly liable under the ATS, but that corporations are, in fact, liable. *Romero v. Drummond Co.*, 552 F.3d 1303, 1315 (11th Cir. 2008) ("The text of the Alien Tort Statute provides no express exception for corporations, see 28 U.S.C. § 1350, and the law of this Circuit is that this statute grants jurisdiction from complaints of torture against corporate defendants." (citation omitted)).

Given that neither the Seventh Circuit nor the Supreme Court has definitively resolved the issue, and given the significant conflicting authority on the issue from outside this Circuit, the Court cannot find Plaintiffs' theory of ATS corporate liability "wholly insubstantial and frivolous," *Bell*, 327 U.S. at 682-83, so as to deprive the Court of jurisdiction to consider the merits of their legal claim against FNRC.[1]

---

[1] The Court notes that when then District Judge, but now Circuit Judge, Hamilton ruled on FNRC's motion to dismiss, he didn't address the corporate liability issue, as the parties did not brief the issue for him. Because judges have an independent and affirmative obligation to ensure that they have jurisdiction over their cases even when the parties don't contest jurisdiction, *see, e.g.*, *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 533 (7th Cir. 2007), his silence on the issue constitutes some evidence that the Court has already concluded that the corporate liability issue isn't a jurisdictional one. Of course his silence isn't automatically dispositive. *See Hagans v. Lavine*, 415 U.S. 528, 533 n.5 (1974) ("[W]hen questions of jurisdiction have been passed on in prior decisions *sub silentio*, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us." (citations omitted)).

### B.  Is FNRC Entitled to Summary Judgment Because It Is a Corporation?

Because the material facts relevant to the narrow issue of corporate liability are undisputed—that is, everyone agrees that FNRC is, in fact, a corporation—the Court must enter summary judgment in FNRC's favor if a corporation cannot be held liable for the actions of its employees in an action filed under the ATS.  *See* Fed. R. Civ. Pro. 56(c) (specifying that summary judgment is available when "there is no genuine issue as to any material fact and…the movant is entitled to judgment as a matter of law").

As this Court has explained previously, "the Supreme Court gave its first [and only] detailed consideration to the scope of the ATS in *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004)." [Dkt. 40 at 39].  There, the Supreme Court explained that the First Congress enacted the ATS to ensure that the federal courts would be available to hear civil actions alleging violations of international law if the states continued, as they did under the Articles of Confederation, to refuse to open their courthouse doors to aliens raising such complaints, a situation that was jeopardizing the diplomatic relations of the young nation.  *See Sosa*, 542 U.S. at 716-17.  *Sosa* held that the ATS permits federal courts to "recognize private causes of action for certain torts in violation of the law of nations" and already recognized at common law at the time of the First Congress: "violation of safe conducts, infringement of rights of ambassadors, and piracy."  *Id.* at 724.  In recognition of the constantly changing nature of international law, however, it also held that federal courts can recognize new federal common-law causes of action for violations of other international norms that are, among other things, as "specific, universal, and obligatory" as the original three international norms that existed at the time of the First Congress.  [Dkt. 40 at 41 (explaining that *Sosa* cited with approval that test, formulated in the Ninth Circuit, and then applying it to Plaintiffs' claims here)].

Although *Sosa* permitted the courts to recognize new causes of action, it "posted many warning signs against judicial innovation under the ATS." [*Id.*].  For example, it explained that the federal courts are, under our Constitution, generally ill-equipped to make a "legislative judgment" about when "conduct should be allowed or not" and, even if the law should prohibit certain conduct, whether "to permit enforcement [of the law] without the check imposed by prosecutorial discretion." *Sosa*, 542 U.S. at 727.  Nonetheless, *Sosa* permits courts to recognize new causes of actions if violating a specific, universal, and obligatory international norm would render the perpetrator "*hostis humani generis*, an enemy of all mankind." *Id.* at 732 (quotation omitted).  Thus, the Supreme Court declared that the door to new cognizable claims was only left "ajar subject to vigilant doorkeeping." *Id.* at 729.

Here, the Court has previously concluded that Plaintiffs' allegations of being forced by Firestone Liberia employees to perform "worst" forms of child labor could squeeze through the door that *Sosa* left ajar. [*See* dkt. 40].  In so holding, the Court implicitly assumed—because it was required to do so under the standard of review for a motion to dismiss—that the conduct of Firestone Liberia's employees conduct could be imputed to FNRC under the traditional common-law doctrine of *respondeat superior*.[2]  Because that assumption has now been challenged, the Court must confront it directly.

FNRC argues, and the majority in *Kiobel* holds, (1) that the ATS requires federal courts to look to international law to decide whether corporations are civilly liable for the actions of

---

[2] Although FNRC didn't raise the issue of corporate liability in the original motion to dismiss, the Court doesn't deem that failure a waiver given the large number of claims at issue in Plaintiffs' Complaint that had to be addressed within limited briefing space.  Further, the recent *Kiobel* opinion constitutes new authority unavailable at the time of the motion to dismiss.  Indeed, the Court notes that Plaintiffs here haven't requested a finding of waiver, thus "waiving" any "waiver" that may have otherwise occurred, *see, e.g.*, *United States v. Morgan*, 384 F.3d 439, 443 (7th Cir. 2004) ("A waiver argument, after all, can be waived by the party it would help….").

their employees who allegedly commit human rights violations and (2) that international law clearly says that corporations are not liable.[3] [Dkt. 209 at 31]; *Kiobel*, 2010 U.S. App. LEXIS 19382 at *110-13 (explaining as to the second point that "[n]o corporation has ever been subject to *any* form of liability (whether civil, criminal, or otherwise) under the customary international law of human rights" and indeed "sources of customary international law have, on several occasions, explicitly rejected the idea of corporate liability" (original emphasis)).

For their part, Plaintiffs don't dispute that international law itself provides no direct basis for corporate liability. [*See* dkt. 295 at 22-23]. They argue instead that either federal common law always governs the issue or, alternatively as Judge Leval's concurrence concludes, that federal common law can fill in the gaps of international law in ATS actions. [*Id.*; dkt. 598 at 4-7]; *Kiobel*, 2010 U.S. App. LEXIS 19382 at *121 ("The position of international law on whether civil liability should be imposed for violations of its norms is that international law takes no position and leaves that question to each nation to resolve.") (Leval, J., concurring).

### 1. In Claims Filed Under the ATS, Does Federal Common Law Automatically Control the Extent of Corporate Liability?

As to whether federal common law or international law automatically controls the scope of liability for violations of "specific, universal, and obligatory" international norms, the Court concludes that *Sosa* has already rejected Plaintiffs' argument. After articulating the test for when courts can recognize new causes of action filed under the ATS, the Supreme Court noted in *Sosa* that "[a] related consideration [to whether the norm meets the test *Sosa* identified] is whether *international law* extends the scope of liability for a violation of a given norm to the perpetrator

---

[3] As FNRC notes, even if federal common law were to govern the issue, it is possible that Plaintiffs' claim could still fail. Sometimes federal common law doesn't recognize *respondeat superior* at all. *See, e.g.*, *Correctional Servcs. Corp. v. Malesko*, 534 U.S. 61, 69-72 (2001) (explaining that *Bivens* actions can only be brought against individual defendants).

being sued, if the defendant is a private actor such as a corporation or individual." *Sosa*, 542 U.S. at 732 n.20 (emphasis added). Plaintiffs' argument that federal common law provides the scope of liability in ATS claims—no matter what international law may say on the matter—impermissibly conflicts with the plain language of *Sosa*. Indeed, even Judge Leval would reject it. *See Kiobel*, 2010 U.S. App. Lexis 19382 at 196 ("[I]f we found that international law in fact exempts corporations from liability for violating its norms, we would be forced to accept that answer whether it seemed reasonable to us or not.") (Leval, J., concurring).

### 2. Does International Law Direct American Courts Adjudicating Claims Under the ATS to Apply Federal Common Law?

The majority and concurring opinions in *Kiobel* thoroughly review the arguments for and against importing federal common-law concepts of corporate liability to an action brought under the ATS. The Court will not repeat all those arguments here. Generally speaking, the Court finds that the approach of the *Kiobel* majority—no corporate liability under the ATS unless and until international law (or Congress) affirmatively approves the doctrine—better comports with the mandate in *Sosa* that ATS liability only attaches after a consensus exists that a defendant's conduct violates international law. Indeed, the Seventh Circuit caselaw already indicates that trial courts must be especially vigilant in their "doorkeeping" function for ATS claims. *Cf. Enahoro v. Abubakar*, 408 F.3d 877, 886 (7th Cir. 2005) (suggesting that it may find exhaustion-of-remedies a condition of ATS claims). The Court finds the analysis of the *Kiobel* majority especially compelling for at least the following three reasons.

#### a. The Lack of Corporate Liability in International Criminal Law

Much of the dispute between the majority and Judge Leval in *Kiobel* concerns the relevance of the fact that international tribunals don't impose criminal liability on corporations but insist instead that the individual wrongdoers be prosecuted. The majority views that fact as evi-

dence of a lack of consensus about the propriety of corporate liability for violations of international law. *Kiobel*, 2010 U.S. App. LEXIS 19382 at *57-72 (chronicling international tribunals that have held individuals criminally accountable for violations of international law and failing to find a single counterexample).

Judge Leval discounts the relevance of that fact because criminal law serves punitive ends, which in his view makes it unfair to subject corporations to criminal violations. As he explains, a corporation "exists solely as a juridical construct and can form no intent of any kind, [so] it is an anomaly to view a corporation as criminal." *Id.* at 168 (Leval, J., concurring) (footnote omitted). Furthermore, the only form of punishment available for corporations is a monetary fine, but "its burden falls on the corporation's owners or creditors (or even possibly its customers if it can succeed in passing on its costs in increased prices), [and thus] may well fail to hurt the persons who were responsible for the corporation's misdeeds." *Id.* at 173 (Leval, J., concurring). And, perhaps most importantly for Judge Leval, "criminal prosecution of the corporation can *undermine* the objectives of criminal law by misdirecting prosecution away from those deserving of punishment." *Id.* (Leval, J., concurring) (original emphasis).

Judge Laval's concurrence, however, proves too much; each of his points cautions against recognizing corporate liability here. As to his first point, Plaintiffs haven't argued that liability for causing a "worst" form of child labor is a strict liability offense. [*See, e.g.*, dkt. 295 at 8 (calling Firestone's actions "deliberate[]")]. To label FNRC an "enemy of all mankind," this Court must be able to assess FNRC's mental state, an "anomaly" for Judge Leval.[4] But Plaintiffs not only want the Court to determine FNRC's mental state, they also want the Court to find that

---

[4] More precisely, Plaintiffs ask the Court to find that FNRC is an "enemy of all mankind" because its subsidiary, Firestone Liberia, hired employees who in turn allegedly encouraged Plaintiffs' guardians to force Plaintiffs to perform hazardous work—an even more attenuated theory of responsibility than direct corporate liability.

FNRC's mental state can support an award of punitive damages. [Dkt. 530 at 24]. Using the ATS to "punish" a corporation rather than to merely "compensate" injured parties runs counter to internationally accepted norms, as Judge Leval understands them, because innocent third parties will be called upon to subsidize the malfeasance of any plantation employees who (allegedly) were responsible for Plaintiffs' plight. Finally, the Court notes that Plaintiffs made no attempt here to sue the low-level managers whom they claimed "encouraged" their guardians to put them to work in the fields. Permitting corporate liability under the ATS will lessen the deterrent effect of litigation for individual actors; few plaintiffs would sue an individual employee if the plaintiffs can sue the deeper-pocketed corporate employer instead. *Cf. FDIC v. Meyer*, 510 U.S. 471, 485 (1994) (rejecting *respondeat superior* in *Bivens* actions) ("If we were to imply a damages action directly against federal agencies, thereby permitting claimants to bypass qualified immunity, there would be no reason for aggrieved parties to bring damages actions against individual officers. Under Meyer's regime, the deterrent effects of the *Bivens* remedy would be lost.").

### b. The Lack of Corporate Liability Under the Torture Victim Protection Act

Deciding to permit civil corporate liability reflects a policy judgment—a policy judgment better made by a legislature than a federal court—that facilitating victim compensation is more desirable than deterring individual misconduct. To that end, the majority in *Kiobel* advanced a powerful argument to which Judge Leval had no response. It explained that its default rule of no ATS corporate liability absent affirmative international or congressional authorization comported with the Torture Victim Protection Act of 1991 (the "TVPA"), Pub. L. No. 102-256, 106 Stat. 73 (codified at 28 U.S.C. § 1350 note), which Congress enacted to codify a classic (pre-*Sosa*) ATS claim. *Kiobel*, 2010 U.S. App. LEXIS 19382 at *25-26 n.23. The TVPA provides a cause of action for victims of torture committed by "[a]n individual" acting under color of foreign law.

*Id.* § 2(a).  Requiring the defendant to be an "individual" precludes corporate liability—unlike the term "person" that Congress originally considered for the TVPA but rejected.  [Dkt. 597-1 at 5 (a copy of the House committee markup of the TVPA) (receiving unanimous consent to change "person" to "individual" so as "to make it clear we are applying [the TVPA] to individuals and not to corporations")].

Because authorizing ATS suits has "such obvious potential to affect foreign relations," *Sosa* indicated that the courts "would welcome any congressional guidance."  542 U.S. at 731.[5]  The only congressional guidance that the Court has found (albeit pre-*Sosa*) is guidance that considered but rejected corporate liability for former ATS human rights violations now codified under the TVPA.

### c.  The Availability of Civil Corporate Liability Outside the ATS

While Judge Leval correctly notes that nations regularly permit corporations to be sued in run-of-the-mill torts, *Kiobel*, 2010 U.S. App. LEXIS 19382 at *145 (Leval, J., concurring), he also notes that "most nations have not recognized tort liability for violations of international law," *id.* at *122.  American citizens cannot sue under the ATS when their human rights are violated, whether by foreign corporations or domestic ones.  *See Sierra v. Lappin*, 600 F.3d 1191, 1198 (9th Cir. 2010) (dismissing ATS suit filed by federal prisoners over low wages and collecting cases holding that U.S. citizens aren't "aliens" eligible to sue under the ATS).  Recognizing corporate liability under the ATS would further exacerbate the disparate treatment between citizens and aliens in American courts and would promote forum shopping.  *Cf. Filartiga v. Pena-*

---

[5] Plaintiffs note in passing that the Supreme Court permits corporations to sue under the ATS to recover damages for injury to their property, *see Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989); when Congress authorized ATS suits "by an alien," it meant "by [] corporation[s]" too, *see Barrow Steamship Co. v. Kane*, 170 U.S. 100, 106 (1897) (explaining that references to "aliens" in the Judiciary Act "include corporations").  But because Congress made no express provision for suits against aliens, *Argentine Republic* is irrelevant here.

*Irala*, 630 F.2d 876 (2d Cir. 1980) (authorizing ATS suit by one citizen of Paraguay against another citizen of Paraguay). Inasmuch as recognizing new ATS causes of action involves comity considerations, *see Sosa*, 542 U.S. at 761 (Breyer, J., concurring), those considerations don't support the expansion of liability that Plaintiffs seek here.

## CONCLUSION

Plaintiffs have sued a corporation under the ATS for an alleged violation of international law. The Court has jurisdiction to hear Plaintiffs' claim and concludes that Plaintiffs have failed to establish a legally cognizable claim because no corporate liability exists under the ATS. Accordingly, FNRC's motion for summary judgment, [dkt. 208], is **GRANTED**.

Final judgment will not, however, issue at this time. To permit effective appellate review of the large evidentiary record submitted in connection with the motion for summary judgment in this exceedingly complicated action, the Court deems it necessary to address several other arguments raised in FNRC's motion for summary judgment, which provide alternative bases for granting summary judgment in favor of FNRC. *See Stephenson v. Wilson*, 2010 U.S. App. LEXIS 17832, *2 (7th Cir. 2010) (criticizing district court for only addressing one issue raised in a complicated habeas petition because "if we reject the ground on which the court did rule, we must reverse and remand for consideration of the other grounds, while if those grounds for relief had been before us we might have agreed with one of them and thereby spared the parties a further proceeding in the district court, possibly followed by a further appeal"). Given the impending departure of counsel for an expensive, time-consuming, and potentially dangerous round of trial preservation depositions in Liberia, the Court elected to expedite its consideration of one dispositive issue, corporate liability, rather than further delay while finalizing its opinion addressing FNRC's other arguments. A comprehensive final opinion will be issued shortly.

10/05/2010

*[signature: Jane Magnus-Stinson]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Terrence P. Collingsworth
CONRAD & SCHERER
tc@conradscherer.com

Katie J. Colopy
JONES DAY
kjcolopy@jonesday.com

Rafael S. Garcia
CONRAD & SCHERER, LLP
rgarcia@conradscherer.com

C. Christopher Groves
JONES DAY
cgroves@jonesday.com

Piper M. Hendricks
CONRAD & SCHERER LLP
phendricks@conradscherer.com

Paul L. Hoffman
SCHONBRUN DESIMONE SEPLOW HARRIS & HOFFMAN
723 Ocean Front Walk
Suite 100
Venice, CA 90291

Kimberly D. Jeselskis
JESELSKIS LAW OFFICES, LLC
kjeselskis@kdjlegal.com

Christian Alexandra Levesque
CONRAD & SCHERER
cl@conradscherer.com

Mark J. R. Merkle

KRIEG DEVAULT LLP
mmerkle@kdlegal.com

Robert A. Mittelstaedt
JONES DAY
ramittelstaedt@jonesday.com

Marc T. Quigley
KRIEG DEVAULT LLP
mquigley@kdlegal.com

Thomas A. Rector
JONES DAY
tarector@jonesday.com

Michael L. Rice
JONES DAY
mlrice@jonesday.com

Benjamin Schonbrun
SCHONBRUN DeSIMONE SEPLOW HARRIS & HOFFMAN, LLP
schonbrun.ben@gmail.com

Kasper Sorensen
CONRAD & SCHERER, LLP
ksorensen@conradscherer.com

David L. Wallach
JONES DAY
dwallach@jonesday.com